WESTERN MARYLAND RAILWAY COMPANY *v.* THE BOARD OF PUBLIC WORKS

(No. 9355)

Submitted May 26, 1942. Decided June 30, 1942.

540

W. S. Wysong, Attorney General, *Ira J. Partlow*, Assistant Attorney General, and *Julius Cohen*, Special Assistant Attorney General, for appellant.

*Eugene S. Williams* and *E. A. Bowers*, for appellee.

Rose, Judge:

The Board of Public Works brings here for review on appeal the order of the Circuit Court of Randolph County rendered on the 9th day of March, 1942, by which, on appeal to that court by the Western Maryland Railway Company, the assessment made by the Board and the valuations for the purposes of taxation of the railway's property in that State were reduced from $11,074,200.00 to $8,504,200.00.

The errors assigned are based solely on this reduction in the assessment. Upon the appeal to the circuit court, the Board, in its answer to the railway's petition for appeal, by way of cross-assignment, insisted that the assessment of $11,074,200.00 was too low and should be raised "to a sum not less than $19,000,000.00." The same contention is made by the Board here, while the railway company argues that from the evidence, the assessment should have been not more than $5,826,258:00. (It was assessed at $8,000,000.00 for the years 1932-1940, inclusive.)

The original assessment by the Board was made in

regular course, but as is customary, and proper, we think, no record was made by the Board of the data upon which the assessment was based. On the appeal to the circuit court, however, voluminous evidence was presented by both the railway company and the Board, and the judge, in deciding the issues, prepared and filed as a part of the record, a very full and carefully prepared written opinion, by which he directly points out the facts and the law upon which his decision was based. In this opinion, it is distinctly stated that the court adopted as the basis of his calculations a so-called "work sheet" prepared in the Tax Commissioner's office and laid before the Board at the time of the original assessment, and that he found all the items therein sustained by the evidence, save one, which he corrected. This item was the sum of $7,499,-826.00 deducted from the total valuation of the Western Maryland property as a "tentative allowance for excess value outside of West Virginia." For this amount, the court substituted the sum of $23,164,209.00. We are concerned, therefore, ultimately with the sole question whether there is evidence in the record sufficient to sustain this action of the court.

The evidence shows that the Western Maryland Railway system complete, consists of approximately 711.71 miles of main track, about 293.83 miles of which lie in the State of West Virginia; that what is called the main line of the system extends from Baltimore westward to Connellsville in the southwestern part of Pennsylvania where it connects with the Baltimore & Ohio, the Pennsylvania, the New York Central and other railways; and that connection is made at Hagerstown, Maryland, with the Norfolk & Western, and through a principal branch of the system with the Reading System near Harrisburg, Pennsylvania. The road outside the State of West Virginia is shown to be a well constructed, single track road with modern rolling stock equipment. The West Virginia branch begins at Cumberland, Maryland, and follows the Potomac River alternately on the West Virginia and Maryland sides to Piedmont, and thence crosses the Al-

legheny Mountains to the Cheat River at Parsons, whence it extends across the divide to the Tygart Valley River at Elkins. From this city, branch lines radiate to Belington, Huttonsville, Durbin and Webster Springs. There are also two wholly disconnected sections in Harrison and Marion Counties, aggregating thirteen miles in length, which merely carry coal from the mines to the Baltimore & Ohio railroad. The West Virginia lines are shown to have been originally constructed primarily as lumber roads and to have been extended from time to time as available lumber was exhausted. The roadbed appears to be poorly constructed, the ties are not standard, the rails are second-hand and of light weight, the engines small and of obsolescent type, the grades and curves sharp and the expenses of operation are unusually high. The freight traffic is almost exclusively outgoing, and is about 97% coal. The freight handled by the whole system amounts, approximately, to eighteen million tons a year, and that furnished by the West Virginia branches to approximately three million. A general decline in freight has continued for years and there is no present prospect of betterment, although a representative of the Geological Survey testified to vast veins of coal near the Western Maryland lines which may ultimately be developed.

The power of courts upon "appeals" of this character is very limited. We cannot resolve ourselves into an assessing body. Indeed, in order that we may find jurisdiction in this court for reviewing the actions of administrative bodies, it has been necessary that we proceed upon the theory that such "appeals" are in the nature of proceedings within our original jurisdiction. *United Fuel Gas Co.* v. *Public Service Commission*, 73 W. Va. 571, 80 S. E. 931; *De Constantin* v. *Public Service Commission*, 75 W. Va. 32, 83 S. E. 88; *Lively* v. *State Compensation Commissioner*, 113 W. Va. 242, 167 S. E. 583. This is true for the reason that bringing to a judicial tribunal the action of an administrative body for review comes dangerously near to being a confusion of the functions of the executive and the judicial branches of our government. The

holding of this Court, at different periods, has not been uniform as to whether, on such appeals in tax cases, the reviewing court acts judicially or administratively. At present, we view the functions of the reviewing court as partly judicial and partly administrative. *Norfolk and Western Railway Co.* v. *Board of Public Works,* 124 W. Va. 562, 21 S. E. 2d 143 (decided this day). But there is no doubt either in this jurisdiction, or in the country at large, that a reviewing court will not interfere with the conclusions reached by an assessing body, unless the assessment made is clearly illegal or grossly and palpably wrong on the facts. *Norfolk and Western Railway Co.* v. *Board of Public Works, supra; West Penn Power Co.* v. *Board of Review,* 112 W. Va. 442, 164 S. E. 862; *Central Realty Co.* v. *Board of Review,* 110 W. Va. 437, 158 S. E. 537; *West Central, etc. Ass'n.* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797 (decided February 24, 1942).

This principle, however, must be enforced conjointly with any applicable statute. And the proceeding before us is purely statutory. Hence, we are not to be greatly influenced by pronouncements made in chancery suits in which assessments are attacked on equitable grounds, such as *Norfolk and Western Ry. Co.* v. *Board of Public Works,* 3 Fed. Supp. 791.

Section 12, article 6, chapter 11 of the Code provides that, in an appeal to the circuit court from the assessment made by the Board of Public Works:

"Upon such hearing the court shall hear all such legal evidence as shall be offered on behalf of the State or any county, district or municipal corporation interested, or on behalf of the appealing owner or operator. If the court be satisfied that the value so fixed by the board of public works is correct, it shall confirm the same, but if it be satisfied that the value so fixed by said board is either too high or too low, the court shall correct the valuation so made and shall ascertain and fix the true and actual value of such property according to the facts proved, ** *."

This proceeding is clearly not an ordinary appeal, nor a review on the record made before the Board of Public Works. The statute mandatorily requires the court to hear "all such legal evidence as shall be offered", thus requiring, not only new evidence, but evidence largely of a different character from that permitted before the original assessment body. It also directly requires the court to "fix the true and actual value of such property according to the facts proved", and commands the court, without regard to the relief asked by the appellant, to increase or decrease the Board's assessment as to the court may seem right. These provisions plainly go far toward making the hearing before the circuit court a *de novo* proceeding. Nevertheless, the assessment made by the Board of Public Works comes before the circuit court with the high presumption that the Board performed its duty honestly and correctly, and the burden of justifying a modification by the circuit court of the assessment so made rests upon the appellant. But on appeal to this Court from the circuit court's action, we, of course, hear no new evidence and we do bring up the record made and preserved by the circuit court. There is, therefore, little analogy between the functions of the circuit court and those of this Court on appeal. Unfortunately, we have no statutory guidance for our actions here. The statute merely provides that after the circuit court has acted, "The State or the owner or operator may appeal to the supreme court of appeals if the assessed value of the property be fifty thousand dollars, or more." Code, 11-6-12.

The statute under which this proceeding is being conducted, and the principles upon which we act in such cases, are sufficiently discussed and announced in *Norfolk and Western Railway Co. v. Board of Public Works*, 124 W. Va. 562, 21 S. E. 2d 143, decided contemporaneously herewith. The attitude of this Court toward the decision of the circuit court is there made clear, but in that case the circuit court found the Board's valuation correct and confirmed the same. In the case at bar, the trial court found the valuation fixed by the Board to be "too high",

and proceeded to ascertain and fix "the true and actual value of such property." Shall a different respect be paid to the circuit court's action, when it confirms and when it corrects the Board's assessment? Can the state (or the Board of Public Works for the state) be permitted to say that the presumption of correctness is in favor of the trial court's action when it favors the state (or the Board), but is in favor of the Board's valuation when the court's decision is adverse to the state? The rule must be uniform. We are not reviewing, except remotely, the Board's action; this appeal is from the action of the circuit court. That action, whether for or against the Board, will be affirmed, unless against the law or unsupported by evidence.

Before the Board and before the court below, when they acted, was, necessarily, the return of the railway company made for taxation purposes to the Tax Commissioner, as well as a paper containing an arrangement, collation and tabulation of such return prepared by the Tax Commissioner's office, pursuant to Code, 11-6-9, and referred to in the record and argument as the Tax Commissioner's "work sheet", or "formula". Prior to 1904, a railway company was required to make a return of its property to the auditor, who was directed to lay the same before the Board of Public Works, and the statute then provided that "If such return be satisfactory to the board, it shall approve the same, and by an order entered upon its records, direct the auditor to assess the property of such corporation or company with taxes, and he shall thereupon assess the same as hereinafter provided." Acts 1882, Chapter 161, Section 67. Thus very clearly the return was the basis of valuation and fixed the amount of the assessment unless corrected by the Board. This language is preserved in substantially the same form in Code, 11-6-9. The present statute, however, has this addition: "The tax commissioner shall arrange, collate and tabulate such returns so that they may be conveniently considered and disposed of by the board and shall then, as soon as practicable, lay them before the board of public works."

This is the genesis of the Tax Commissioner's much debated "work sheet". We think the statute clearly implies that the arrangement, collation and tabulation of the returns so required by the statute contemplates that this digest shall correctly and fully summarize the return of the railway company, and that, in the ordinary study of the return, this "work sheet" of the Tax Commissioner, rather than the return itself, will, as a matter of convenience, be used by the Board members. In this manner, the return "may be conveniently considered", and the consideration by the Board of this summary will be, for practical purposes, a consideration of the return itself.

An examination of this paper prepared by the Tax Commissioner shows that it fixed a tentative assessment of the Western Maryland Railway Company at $11,074,248.00, being within $48.00 of the assessment established finally by the Board. The railway company contends, and the Board denies, that this "formula" and this result were accepted or adopted by the Board. The same paper contains like information with reference to the other four major railroads in this state, and in each of the other four cases, the tentative assessment suggested by the Tax Commissioner's tabulation corresponds exactly with that finally fixed by the Board to the nearest one hundred dollars. The chairman of the Board testifies that he, and he believes the other members of the Board, took into consideration a large number of elements and facts not covered by the railway company's return, or the Tax Commissioner's tabulation, and that neither the Tax Commissioner's formula, nor any other formula, was used in arriving at the assessment determined upon. We readily accept this statement as correct; but this evidence went only to the strengthening of the presumption of honesty and diligence on the part of the Board, and, to the refutation of any inference that the return and work sheet were the only matters considered. This testimony tends to support the correctness of the assessment by the Board on the information before it, but it did not furnish any data or facts upon which the circuit court could act.

It is not necessary, or proper, here to decide the question whether the Board adopted or used the Tax Commissioner's work sheet or formula. It is not even necessary for us to decide whether the circuit court undertook to resolve that issue, but we do observe from the record that there was evidence before the court on which a sustainable decision by him could have been made to that effect.

But the circuit court did avowedly adopt the Tax Commissioner's formula. We cannot say that this was error. The witnesses and counsel for both sides agree that this formula is not subject to substantial objection, and that an approximately correct valuation of the railway company's property can be deduced from the company's return by the process shown on the work sheet. The court found that the factual elements set forth on the Tax Commissioner's work sheet were sustained by evidence, except that relating to the excess valuations of the railway's property outside the State of West Virginia. The work sheet showed this excess valuation to be ten per cent of the total valuation, and further disclosed that the same ten per cent of excess value outside the state was allowed in each of the four other major railroads of the state. The court might well have concluded that such a treatment of possible excess values indicated a conventional or arbitrary deduction which was not in any way related to the evidence. The court expressly found that in the tracks, rolling stock and other like property of the railway company, the excess value outside the state was large, but undeterminable in amount, from the evidence before him. But on the single item of terminals, it was held, from the evidence, that the Interstate Commerce Commission had placed a valuation on the terminals outside the state of $24,980,702.00, and on those within the state $1,816,493.00. Therefore, for the sum of $7,499,826.00 excess valuation of property outside the state, shown by the Tax Commissioner, there was substituted the sum of $23,164,209.00. This correction of the Tax Commissioner's calculations resulted in the reduction of the assessment

complained of. This finding of the court was plainly not without sufficient support in the evidence.

As to the Board's contention that its own assessment of $11,074,200.00, should be increased to a sum not less than $19,000,000.00, we observe that all the data from which the latter value is attempted to be deduced, was before the Board and was evidently considered by it as inadequate. We cannot, except in a clear case and upon full explanation, entertain the suggestion of the Board that it fully, diligently and intelligently performed its duty in this case, and yet made an error of more than seventy per cent in the valuation of this property. How can the Board ask us to presume that its valuation was correct and at the same time assert that the evidence proves it to have been wrong? It is argued that by nineteen separate formulae, each of which, in various courts of final resort, has been approved as a sufficient basis for determining the value of property for taxation purposes, its claim for an increase to $19,000,000.00, approximately, may be sustained. The so-called nineteen formulae are in fact but variations or combinations of only three distinct bases upon which such valuation is ordinarily determined, neither of which ought, if avoidable, to be used separately: (1) the market value of the railway company's outstanding capital securities; (2) the capitalization of the company's earnings; and (3) the reproduction costs of the system, less depreciation and plus betterments. Often, the average of these three items is used as a basis for determining value. The nineteen formulae show variations of the first, by taking the market value of the securities for a certain number of years, and of the second, by capitalizing the income at various rates of interest, and of the third, by approaching the reproduction cost in different ways. Two or more of these results are then combined to produce the remaining formulae. We regard these nineteen formulae as highly valuable for the purpose of testing the correctness of the valuations to be considered in the case, but it will at once be seen that each of them depends basically on the correctness of the data with

which they begin. "They are, therefore, helpful, but not controlling.

The same observations apply to the formulae suggested by the Board for correctly allocating the income, expenses and value of the lines in West Virginia. The principal witness for the Board deduced mathematically from data in the offices of the Interstate Commerce Commission, without any actual appraisement or inspection of the property, that the value of the entire system of the Western Maryland Railway Company was $87,000,000.00. He arrived at this figure by taking a valuation placed on the property by the Interstate Commerce Commission in 1919, deducting therefrom an estimated annual depreciation and adding thereto certain betterments or additions shown to have been made. This method, of course, is legitimate and enlightening, but cannot be considered controlling to the extent of eliminating other conflicting evidence in this case. The same observation applies to the method by which the same witness undertook to allocate expenses and income to the West Virginia branch of the railway system, and, thereby to fix its proper valuation.

The same principles dispose of the railway company's claim to a further reduction of the valuation fixed by the circuit court. This claim is based primarily on its evidence purporting to show a still greater excess of values outside the state and upon a different formula for allocating the percentage of total value to the portion of this value to West Virginia. The whole matter was one of evidence, and the reasoning of counsel falls far short of demonstrating that the trial court was clearly wrong in rejecting this contention.

Our judgment, therefore, is that the corrected assessment made by the Circuit Court of Randolph County is sufficiently supported by the evidence and involves no error of law, and that, therefore, it is beyond the jurisdiction of this Court to interfere therewith.

The order appealed from is, therefore, affirmed.

*Affirmed.*