NORFOLK AND WESTERN RAILWAY COMPANY *v.* THE BOARD
OF PUBLIC WORKS

(No. 9345)

Submitted May 5, 1942. Decided June 30, 1942.

*Crockett & Tutwiler, S. Falkenstein,* and *F. M. Rivinus,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, *W. Holt Wooddell,* Assistant Attorney General, and *Julius Cohen,* Special Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

The Norfolk and Western Railway Company appealed to the Circuit Court of McDowell County from the finding of the Board of Public Works fixing for the purposes of

taxation the value of its property located within the State of West Virginia for the tax year 1941 at $75,619,600.00, and that court, functioning as an administrative body, as well as a court of review, under Code, 11-6-12, "confirmed" the Board's finding. This appeal was granted upon the application of the railway company, the errors assigned relating to tangible property located within the boundaries of municipalities and that situate outside those boundaries (Classes III and IV), intangible property (Class I) not being directly affected.

The position of the railway company is that the Board in arriving at the value fixed by it used the figures submitted by the State Tax Commissioner as required by Code, 11-6-2, and that in doing so it adopted as the sole basis used in arriving at the taxable value of the railway's property, the method followed by the State Tax Commissioner in preparing his written report to the Board of Public Works, commonly referred to as a "work sheet", and that in the preparation of the so-called work sheet, certain demonstrable mathematical mistakes had been made, the combined result of which was an overvaluation of its property to the extent of $6,735,081.00.

In the proceeding before the Circuit Court of McDowell County, to the petition of the railway company the Board of Public Works filed a verified answer in which it admits that it used in arriving at the value of petitioner's property and that of other comparable railroads with property within this state, the method set forth in the petition, but denies emphatically that that method was the sole method considered and utilized by it in reaching its conclusions, and alleged affirmatively that it took under advisement the following pertinent matters:

"(a) The data shown in the return filed by petitioner.

(b) The history of the Norfolk and Western Railway Company and its property.

(c) Geographical position.

(d) The nature and character of the country through which the railroad passes.

(e) The amount of coal, minerals and other commodities for transportation.

(f) Populous cities and rich territories through which the road extends.

(g) Present and future prospects of traffic.

(h) The length of line and connections.

(i) The cost of construction, less discount for depreciation.

(j) Physical condition of the road-bed, bridges, tracks and rights of way.

(k) The amount and condition of its rolling stock and equipment.

(l) The physical value of its property.

(m) The presence or absence of parallel competing lines.

(n) The value of the use of such property in the operation of its railroad.

(o) Financial condition.

(p) The gross and net earnings over a period of years.

(q) The stock and bond value over a period of years.

(r) Bonded indebtedness.

(s) The dividend producing power of the company.

(t) Present and prospective earning power.

(u) Capitalization of net earnings at 6% over a period of years.

(v) What prudent men would give for the property as a permanent investment, with a view to present and future income.

(w) All other things which would tend to make it a profitable investment as an operating railroad.

(x) The work sheets furnished to the board by the tax commissioner.

(y) And all other data, statistics and information which is legally related to value."

The Board, the members of which could not be required to testify concerning the method followed (see *Great Northern Ry. Co. v. Weeks*, 297 U. S. 135, 145, 56 S. Ct. 426, 80 L. Ed. 532), in its brief and avowal of testimony, which, together with a similar avowal by the railway company,

was, by agreement, substituted for evidence in the circuit court, states that in considering the system of calculation used by the State Tax Commissioner in arriving at the figures shown by his work sheet and the foregoing factors listed from "A" to "Y", inclusive, it reached its collective judgment and that the striking numerical similarity of its conclusions with those of the State Tax Commissioner, exemplified by a comparison of the figures on his work sheet with those of the Board, was "merely because such offered a convenient approximation of the value arrived at independently by the members of the Board after carefully weighing what they considered to be all the relevant factors involved." To state the matter plainly, there is a clear-cut issue of fact between the railway company and the Board of Public Works, the railway company being able to show a rather outstanding similarity between the findings of the Board of Public Works and the State Tax Commissioner's work sheet, and four quite palpable errors by which those figures were arrived at on the work sheet; and the Board of Public Works denying emphatically that the method used by the State Tax Commissioner in reaching his conclusions was the sole method considered by it in arriving at the taxable value of the railway company's property.

In order to demonstrate to a mathematical certainty the mechanical mistakes that were committed in compiling the Tax Commissioner's work sheet, the railway company followed the method admittedly applied and the figures admittedly used in arriving at the Tax Commissioner's result. Since there is no dispute concerning the method or concerning the figures used by the Tax Commissioner, we do not regard it as necessary to make more than a very general statement concerning either. The figures were based upon the railways company's annual return and the method under which those figures were used involves, first, arriving at the value of the tangible property held by the railway company under its entire system, and second, allotting to the State of West Virginia for the purposes of taxation its proper proportion of that system valuation.

In arriving at the system's value, the following method, loosely stated, was followed: the net annual income was capitalized over a period of five years by taking the aggregate and discovering upon what amount it would equal a six per cent annual return, to that amount was added the average over the same period of the sum of the outstanding capital stock and debts. Since the answer represented a double valuation arrived at from two distinct aspects, in order to determine a mean according to each its proper proportionate effect, that answer was divided by two. Due to the fact that the railway company admitted that it owned a ten per cent larger valuation of tangible property outside the State of West Virginia than within it, that percentage was deducted from the system value prior to attempting a conclusion as to West Virginia's correct proportion.

In arriving at the proper share of the total to be allotted to West Virginia, an elemental percentage was arrived at in a number of different ways, each percentage being treated as forming a constituent part of a gross aggregate from which an average was taken as constituting the answer. Among the contributing factors thus used were: (1) West Virginia's percentage of the system track mileage; (2) its percentage of the system's rolling stock mileage; (3) the percentage of traffic on the basis of ton miles; (4) the percentage of gross revenue; (5) net revenue, and three other similar percentages. When a conclusion was reached as to West Virginia's proper proportion of the system value, one-third of that value was deducted, we are told to cover any mistakes or discrepancies that might have, or could have, been made in reaching the conclusion, and not for the purpose of assessing all tangible property in the State of West Virginia on a uniform basis in order to prevent the violation of a provision contained in both the State and Federal Constitutions, whereas, the requirement that property shall be assessed for the purposes of taxation at its true and actual value, from which the Tax Commissioner's work sheet

and the Board have deducted thirty-three and one-third per cent, is only a legislative requirement.

The railroad company asserts that in arriving at the system value by the use of the method above attempted to be outlined, which is not under attack, the Tax Commissioner committed certain mechanical or clerical mistakes: In arriving at what may be termed "stock and debt" valuation, the value of certain treasury securities was added, whereas, the proper method and that followed in the preceding four years was to deduct the value represented by such securities; in fixing the same valuation, cash on hand was included in the treasury investments wrongfully assessed; and in arriving at the net operating income, no accrued depreciation was included in the operating expense. In arriving at the percentage of system value to be assigned to West Virginia and in dealing with the percentage of net operating revenue, the Tax Commissioner used the entire revenue of the system as the denominator, not including the amount of Federal taxes, and used as the numerator the West Virginia revenue, including that tax.

Cases of this nature are not of frequent occurrence, so perhaps, it might be well to discuss in general what we consider to be the proper function of the public bodies which may be required to pass upon, in one way or another, the questions of fact and of law involved in reaching a valid conclusion, beginning with the function of this Court.

In tax cases, courts, as distinguished from administrative bodies, cannot properly consider the evidence of value, except in instances where it is plainly shown to have been arbitrarily and unjustifiably ignored, when the finding will be nullified. *Great Northern Railway* Co. v. *State Tax Commissioner et al.,* 297 U. S. 135, 151, 56 S. Ct. 426, 80 L. Ed. 532; *Norfolk & Western Railway Co.* v. *Board of Public Works of West Virginia,* 3 Fed. Supp. 791, 796. We wish to note and correct in passing a statement made in the opinion in the case of *Wheeling Bridge & Terminal Railway Co.* v. *Paull, Judge,* 39 W. Va. 142, 147,

19 S. E. 551, to the effect that the ascertainment of the value of property is strictly a judicial function. For the purpose of taxation, it is primarily an executive or administrative function with which the courts will not interfere unless shown plainly to have been abused. *Great Northern Ry. Co.* v. *Weeks,* 297 U. S. 135, 151, 56 S. Ct. 426, 80 L. Ed. 532. This Court has neither inherently nor under any statute of which we are aware, administrative jurisdiction nor authority and hence can only view the matter of valuation for the purposes of taxation to the extent that that may be done in the exercise of its judicial power. See *State* v. *McDowell Lodge,* 96 W. Va. 611, 612, 123 S. E. 561, 38 A. L. R. 31.

We are of the opinion that under Code, 11-6-12, the situation concerning the jurisdiction and powers of the circuit court is quite different. Of course, independently of any statutory provision, our circuit courts have an inherent constitutional jurisdiction, in so far as entertaining and passing upon judicial questions is concerned. However, the section last cited confers upon those courts a power that, in our opinion, extends considerably beyond the power of the judiciary. The appeal to the circuit court lies as a matter of right upon the petition of the complaining taxpayer. After the case is matured before the circuit court in the manner prescribed by statute, the court shall proceed to hear "all such legal evidence as shall be offered on behalf of the state or any county, district or municipal corporation interested, or on behalf of the appealing owner or operator." The court shall then "confirm" the value fixed by the Board 'if it deems it correct, or if too high or too low, shall proceed to fix "the true and actual value of such property according to the facts proved, * * *." The section ends with the provision that allows the parties to appeal to this Court in a proceeding involving a valuation of at least fifty thousand dollars.

It will be noted that in this section, the circuit court is directed to take evidence, consider the case in its entirety and to correct the assessment from which the appeal lies. The courts not being inherently the tribunals

to hear evidence of, and fix, valuations, in so far as this statute confers that power upon the designated circuit court, it must be regarded as an administrative or executive function. In granting the right of appeal to this Court to the owner or operator, the Legislature seems to have correctly assumed that this Court could not sit as an administrative body. The result of the statute is to confer upon the circuit courts, in addition to their inherent judicial power, which, of course, they are expected to exercise in these as well as all other cases coming before them, the administrative power to review the finding of fact by the Board of Public Works in an appellate proceeding and in that proceeding to correct errors to which its attention has been directed, even though, in order to do so, the matter may require further development in the circuit court.

Though the question is not presented in this instance, we believe that it is proper to comment upon what might be thought an improper commingling of executive and judicial functions in the circuit courts by the act under consideration. The Legislature first conferred similar powers upon our circuit courts in the year 1882, and this Court has directly and indirectly approved the exercise of the powers so granted many times. A legislative construction of organic law, acquiesced in without apparent opposition from the time that the framers of our Constitution were actively participating in public matters, is deeply persuasive, if not binding. See *Hodges* v. *Public Service Commission*, 110 W. Va. 649, 653, 159 S. E. 834, and *West Penn Power Company* v. *Board of Review*, 112 W. Va. 442, 446, 164 S. E. 862. See also, *Hampton, Jr. & Co.* v. *United States*, 276 U. S. 394, 72 L. Ed. 624, 631, and *Myers* v. *United States*, 272 U. S. 52, 175, 71 L. Ed. 160, 190.

Coming, then, to the functions properly exercised by the Board of Public Works, its duties in arriving at the assessment value of the properties of public utilities are primarily administrative and necessarily in conformity to the acts of the Legislature under which it operates and from which it receives its powers. An assessing agency

is not bound by any systematic formula or theory in reaching its conclusion as to valuation, and it may consider an unlimited number of pertinent contributing factors. *Great Northern Railway Company* v. *Weeks*, 297 U. S. 135, 139, 56 S. Ct. 426, 80 L. Ed. 532. The same rule applies to the apportionment of the proper shares of system value to the taxing units through which the utility operates. *Rowley* v. *Chicago & Northwestern Railway Co.*, 293 U. S. 102, 109, 55 S. Ct. 55, 79 L. Ed. 222. In order for the courts, as such, to reverse or to interfere with the exercise of the taxing power, there must be a clear showing of the arbitrary abuse of that power that amounts to a *mala fides* purpose to disregard the principle of uniformity, or of practical confiscation.

Based upon the foregoing discussion and upon the foregoing cases representing the matured judgment of the Supreme Court, and according to the verified answer of the Board of Public Works the required dignity and weight, we believe that the railway company has failed to make a showing that would require, or justify this Court in, reversing the finding of the Circuit Court of McDowell County, even conceding that it has been established that four mechanical mistakes of some consequence were made in the preparation of the Tax Commissioner's work sheet. The Board denies under oath that the work sheet represented the sole method followed by it in reaching the valuation to be assessed. The railway company has made no showing nor has it attempted to show, that the assessed valuation is excessive, nor that it lacks uniformity with that of other taxpayers in a like situation. Viewing its contention most favorably, in the light of the Board's answer it has only shown that one out of the many mental processes used by the Board in reaching its conclusion was misapplied. In order to justify this Court in exercising its judicial powers to declare that the finding of the Board of Public Works is unsound, we are of the opinion that it must first be shown that the complaining taxpayer has suffered a material prejudice. What is usually called harmless error is not enough. The railway

company has shown that the correct application of what it asserts was the sole theory by which the Board reached its result would have given them a valuation more than six million dollars under the figure at which the Board arrived. The railway company does *not* show that the figure arrived at by the Board of Public Works was plainly excessive nor that there was lack of uniformity due to an arbitrary departure from the valuation of taxpayers in like situation. That, in our judgment, is the indispensable preliminary showing that has not been made here. To the contrary, the Board of Public Works has shown that the valuations fixed by it are lower than the valuations shown by the railway company's return in any one of the past five tax years. If that be so and if the requirement of uniformity has been adhered to in a manner that does not involve a violation of the Fourteenth Amendment to the Federal Constitution, we fail to see where the railway company has been prejudiced, no matter how faulty the application of the methods used by the Board, or a part of them, in reaching their conclusion not shown to be unsound, may have been.

The Board of Public Works states in its answer that its deductions of one-third from the figure representing the true and actual value of the railway company's property was in order to compensate the taxpayer for any unnoticed mistakes in calculation that might have been made to his prejudice in arriving at the taxable value of his property. The railway company clearly is not prejudiced by this practice, and consequently, although it is arrestingly conspicuous as a part of the State Tax Commissioner's work sheet, there is no point of assigned error based thereon. The property of all the railroad companies, according to the work sheets which appear in this record for the purposes of comparison, are treated in the same way, and while there is no record showing, beyond that contained in the answer, of the reason for following that method, based upon the presumption that a public officer is presumed to have lawfully discharged his duty, it is to be supposed that the Board of Public Works, in

order to follow a uniform system of arriving at assessment values which would not be a violation of the Fourteenth Amendment to the Federal Constitution and would result in uniform assessments throughout West Virginia, even though the practice did constitute a departure from a true and actual value assessment, regarded it as more desirable to avoid known unequal assessments than to assess specific property at its true and actual value. This form of deduction was dealt with by this Court in *West Penn Power Co.* v. *Board of Review,* 112 W. Va. 442, 447, 164 S. E. 862. We are under the impression that the Board of Public Works could have taken a much more tenable position on this question, and likely would have done so had it been a matter in controversy.

Based upon the foregoing discussion, the order of the Circuit Court of McDowell County is affirmed.

*Affirmed.*