JOHN ALDERSON SIMMS, *et al.*

*v.*

THE COUNTY COURT OF KANAWHA COUNTY, *etc. et al.*

(No. 10336)

Submitted October 31, 1950. Decided November 3, 1950.

'GIVEN, JUDGE, not participating.

*Cleo S. Jones,* for relators.

*Dale G. Casto,* for respondents.

LOVINS, PRESIDENT:

Petitioners, John Alderson Simms and W. R. Gillespie, citizens and residents of Kanawha County, West Virginia, seek a writ of mandamus to compel Carl Calvert, Mont Cavender and John Slack, Jr., Commissioners of the County Court of Kanawha County; Paul Wehrle, clerk of such court, and H. R. Young, his deputy, to reinstate on and "insert in" the permanent voting registration books and registration records of Kanawha County, the names of all qualified voters, whose registration has been cancelled under a provision of Section 5, Article 2, Chapter 43, Acts of the Legislature, Regular Session, 1941, as amended by Chapter 92, Acts of the Legislature, Regular Session, 1947, which reads, in part as follows: "* * * If a voter fails to vote at least once during a period of three years, his registration shall be cancelled and he shall, by letter or postal card, be given proper notice thereof by the

clerk of the county court, to the effect that in order to vote he must register again."

The case comes before this Court on the petition, the answer thereto, and a stipulation of facts.

On the 7th day of June, 1950, the county clerk of Kanawha County mailed to 5,460 persons, including the petitioner, W. R. Gillespie, a notice that their registrations had been cancelled for failure to vote during the preceding three years, and that in order to vote in the next election it would be necessary that they register again. The notice gave the address of the permanent registration office in the City of Charleston, where a new registration could be effected.

The controlling issue presented in this proceeding is whether that portion of the statute, quoted above, and other sections of the Permanent Registration Law are constitutional. Petitioners contend that the pertinent sections of such law contravene Sections 1 and 12 of Article IV and Section 43 of Article VI of the Constitution of West Virginia, in that such sections create a disqualification of a citizen's right to vote; that the statute is not a proper registration law; and that it does not set forth a proper criterion or method by which the clerk of the county court is to determine whether a person has voted within a three-year period.

Section 1 of Article IV of the State Constitution provides: "The male citizens of the State shall be entitled to vote at all elections held within the counties in which they respectively reside; but no person who is a minor, or of unsound mind, or a pauper, or who is under conviction of treason, felony or bribery in an election, or who has not been a resident of the State for one year, and of the county in which he offers to vote, for sixty days next preceding such offer, shall be permitted to vote while such disability continues; but no person in the military, naval, or marine service of the United States shall be deemed a resident of this State by reason of being stationed therein." A further provision relative to the quali-

fication of voters will be found in the Nineteenth Amendment to the Constitution of the United States permitting women to vote.

Section 12 of Article IV reads: "The Legislature shall enact proper laws for the registration of all qualified voters in this State."

Relators direct our attention to Section 43 of Article VI of the Constitution of West Virginia, reading as follows: "The Legislature shall never authorize or establish any board or court of registration of voters"; and contend that this section inhibits the clerk of a county court as the agent of that court from registering voters. Relators also contend that such clerk may not determine who are qualified voters, and decide when registration shall be cancelled.

It is well established that this Court "will not pass upon the constitutionality of a statute, unless a decision upon that very point is necessary to the determination of the case." *Edgell* v. *Conaway*, 24 W. Va. 747. See *Norris* v. *County Court*, 111 W. Va. 692, 163 S. E. 418; *Bates* v. *State Bridge Commission*, 109 W. Va. 186, 153 S. E. 305; *Cosner* v. *See*, 129 W. Va. 722, 42 S. E. 2d 31. A statute is presumed to be in accordance with the provisions of the Constitution until the contrary is shown. *Lingamfelter* v. *Brown*, 132 W. Va. 566, 52 S. E. 2d 687. If two constructions may be given to an Act of the Legislature, one of which will render it invalid as being contrary to the provisions of the Constitution and the other of which would uphold the validity of the Act, the Act will be construed so as to accord with the Constitution. *Railway Co.* v. *Conley and Avis*, 67 W. Va. 129, 67 S. E. 613; *Pipe Line Co.* v. *Hallanan*, 87 W. Va. 396, 105 S. E. 506. See *Webb* v. *Ritter*, 60 W. Va. 193, 54 S. E. 484.

The Permanent Registration Law will be found in Chapter 43, Acts of the Legislature, Regular Session, 1941; Chapter 50, Acts of the Legislature, Regular Session, 1943; Chapter 62, Acts of the Legislature, Regular Session, 1945; Chapter 92, Acts of the Legislature, Regular Session, 1947;

and Chapters 56 and 57, Acts of the Legislature, Regular Session, 1949. The original Act and all other Acts amendatory thereof will be hereinafter designated, collectively, as the "Permanent Registration Law", and reference will be made to the sections of such law, here considered, as the same are numbered in the various Acts above mentioned.

Elections and the right of suffrage are created by organic and statutory law. The right to vote in elections is not a natural, absolute and inherent right. *Booten* v. *Pinson,* 77 W. Va. 412, 422, 89 S. E. 985; *State* v. *Edwards,* 95 W. Va. 599, 122 S. E. 272; *Brannon* v. *Perkey,* 127 W. Va. 103, 107, 31 S. E. 2d 898. The qualifications and disqualifications of citizens of this State as voters are prescribed by Section 1, Article IV of the Constitution of this State, and cannot be changed by legislative enactment. *State* v. *Edwards, supra.* See *Funkhouser* v. *Landfried,* 124 W. Va. 654, 660, 22 S. E. 2d 353; *Brannon* v. *Perkey, supra; Lawhead* v. *County Court,* 129 W. Va. 167, 170, 38 S. E. 2d 897. A mandate is given the Legislature, however, by Section 12 of Article IV of the Constitution, to enact proper laws for the registration of qualified voters.

A statute requiring the registration of voters is for the purpose of preventing fraud in elections. Bearing on that question, it is to be noted that another provision of the Constitution of this State provides: "The Legislature shall prescribe the manner of conducting and making returns of elections, * * * and shall pass such laws as may be necessary and proper to prevent * * * fraud in voting, counting the vote, ascertaining or declaring the result, or fraud in any manner upon the ballot." Article IV, Section 11, of the Constitution of West Virginia.

The duties imposed upon the Legislature by Sections 11 and 12 of Article IV of the Constitution require that branch of the State Government to regulate elections, and include the passage of a statute providing for the registration of qualified voters.

It is held by the great weight of authority that if the

passage of registration statutes is required of a Legislature, such statutes are regulatory, and they do not in any way impinge upon the qualifications of voters, as provided by a State Constitution. In *Blue* v. *State ex rel. Brown* (Ind.), 188 N. E. 583, it was reasoned that the Permanent Registration Law of Indiana did not violate the provisions of the State Constitution. The Court in the *Blue* case applied the test of reasonableness of the regulating provisions of the registration statute. See Annotation 91 A. L. R. 349, where the holdings of the courts in various jurisdictions are cited and discussed. II Cooley's Constitutional Limitations, 8th Ed., page 1368, *et seq.;* McCrary on Elections, 4th Ed., Section 127, *et seq.*

In some jurisdictions the authority of the Legislature to enact registration laws has been denied, and various questions have been raised with reference to sick, disabled and absent voters, who had not registered, and persons who had reached voting age shortly before the election as being deprived of the right of suffrage by registration statutes. But no such questions are presented in this proceeding.

An examination of the pertinent sections of the Permanent Registration Law discloses a careful effort on the part of the Legislature to minimize omissions from the list of legal voters. Section 5 of the Permanent Registration Law, hereinabove quoted, provides for notice to be given by letter or postal card of the cancellation of the registration of a voter, who has abstained from voting for three years. This is a reasonable and necessary provision, so as to prevent padded registration lists. This section serves in some degree to purge the registration lists of those who have removed from a county or a state, or those who have died, because failure to vote is some evidence, though long short of conclusive, that a person who does not vote over a period of three years is no longer a resident and entitled to vote. It is important to fair elections that only those be kept on the registration lists who are entitled to vote. Death and a shifting of population call for reasonable and frequent correction of such

lists. These considerations, we think, make Section 5 a reasonable exercise of legislative power. The reasonableness of Section 5 of the Permanent Registration Law stands out especially when it is considered that under Section 26 of the Permanent Registration Law, the clerk of a county court may register a qualified voter by "filling in the prescribed registration form or forms, as the case may be, and having them signed by the applicant under oath or affirmation, except as is otherwise provided * * *." By virtue of that provision of the statute a qualified voter may register again without much inconvenience. We find no unreasonable regulation in the Permanent Registration Law which would justify this Court in holding Section 5 of that law unconstitutional. As to the general principles relating to the regulation of elections, see *Pearson* v. *Board of Supervisors* (Va.), 21 S. E. 483; 18 Am. Jur., Elections, Sections 44, 51, 82 and 83; 29 C. J. S., Elections, Section 13 b (1).

Section 43 of Article VI of the Constitution of this State, here invoked by relators, first appears in the Constitution of 1872. That provision of the Constitution has not been discussed or referred to in any decision of this Court, except in the case of *List* v. *Wheeling*, 7 W. Va. 501, 525, wherein such section is referred to by number only and is not discussed.

In order to determine the method in which Section 43 of Article VI of the Constitution has been construed by the Legislature of this State, a brief and partial history of the subject of registration of voters is here pertinent.

In the Constitution of 1863, Article III, Section 12, it was provided that: "The Legislature may provide for a registry of voters * * *." In the Constitution of 1872 by Article IV, Section 12, it was provided that "no citizen shall ever be denied, or refused the right or privilege of voting at an election, because his name is not, or has not been registered, or listed, as a qualified voter." By Joint Resolution No. 19, adopted February 22, 1901, the Legislature proposed an amendment to Section 12, Article IV. The

amendment was adopted, and now is Section 12 of Article IV of the Constitution, above quoted.

Prior to the adoption of the amendment in 1901, it was provided by statute that assessors should list the names of qualified voters, and that the clerk of the county court of each county should furnish a list of qualified voters to the commissioners of election at the same time such clerk furnished the supplies for holding elections. Sections 91 and 99, Chapter 89, Acts of the Legislature, Regular Session, 1891. Sections 91 and 99, Chapter 25, Acts of the Legislature, Regular Session, 1893. Similar provisions will be found in Chapter 43, Acts of the Legislature, Regular Session, 1905, providing in more detail for the registration of voters.

By Chapter 19, Acts of the Legislature, Extraordinary Session, 1908, amended and reenacted by Chapter 45, Acts of the Legislature, Regular Session, 1911, enacted after the adoption of Section 12, Article IV of the Constitution, the system of registration of voters was changed.

Without detailed discussion, it suffices to say that an examination of Chapters 19 and 45 of the Acts of 1908 and 1911 discloses that county courts were authorized to appoint registrars, to furnish suitable books and blanks for the registration of voters, and to hear any matters as to the registration of voters at a meeting to be held on the second Monday in October preceding any general election. Clerks of the county courts were given custody of the registration records.

Thus it will be seen that the Legislature has construed Section 43 of Article VI of our Constitution in such manner as to permit the imposition by statute of duties on the county court of each county and the clerk thereof with reference to the registration of voters. The legislative and contemporaneous constructions are very persuasive, if not binding. See *Railway Co.* v. *Board,* 124 W. Va. 562, 21 S. E. 2d 143, 147; *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 653, 159 S. E. 834; *Myers* v. *United States,* 272 U. S. 52, 47 S. Ct. 21.

Applying the rule of legislative construction, in our consideration of Section 43, Article VI of the Constitution of this State, we see no objection to the provisions of the Permanent Registration Law, in authorizing the clerks of county courts of the various counties to re-register, as voters, qualified persons whose names have been stricken from registration lists under Section 5 of the Permanent Registration Law. We are supported in this view by the significant fact that Section 12 of Article IV of the State Constitution, requiring the passage of a proper law for the registration of voters, was adopted after Section 43, Article VI, was adopted. Furthermore, Section 43, Article VI of the Constitution of this State prohibits *the creation of a court or board for the registration of voters.* No such court or board is created by the provisions of the Permanent Registration Law.

Necessarily a law must be executed by human agencies, and at least since 1908 the county courts and the clerks thereof have, under the authority of various statutes, performed the vital functions in the registration of voters.

In our examination of the record we find no deviation by the respondents from the pertinent statutory provisions of the Permanent Registration Law. On the contrary, the stipulation of facts discloses that the respondents have complied with the applicable provisions of the statute and have properly performed the duties imposed on them with reference to the registration of voters in Kanawha County.

The enactment of the provisions of the Permanent Registration Law, here challenged, is a valid exercise of constitutional power by the Legislature of this State, and the contentions of relators are not tenable.

In accordance with the foregoing the writ of mandamus prayed for is denied.

*Writ denied.*