BANKERS POCAHONTAS COAL COMPANY, *et al.*

*v.*

COUNTY COURT OF MCDOWELL COUNTY

(No. 10248)

Submitted September 26, 1950. Decided December 19, 1950.

*Thornton G. Berry, Jr.,* for appellants.

*Jack Marinari,* Prosecuting Attorney, *William C. Marland,* Attorney General, *George W. Stokes,* Assistant Attorney General, for appellee.

LOVINS, PRESIDENT:

This appeal is prosecuted to this Court by Bankers Pocahontas Coal Company, a corporation, and Crozer Coal and Land Company, a corporation, hereinafter respectively designated as "Bankers" and "Crozer", under the provisions of Code, 11-3-25, as amended by Chapter 41, Acts of the Legislature, Regular Session, 1933.

Bankers and Crozer contend that the valuations for tax purposes of certain tracts of land owned by them, situated in McDowell County, are excessive. The valuations on their lands fixed by the assessor were contested by Bankers and Crozer, and, after a hearing in the County Court of McDowell County, the valuations fixed by the assessor were sustained. Upon a statutory appeal to the Circuit Court of McDowell County the action of the county court was affirmed. This Court granted a statutory appeal to review the action of the circuit court.

Bankers contends that excessive valuations for tax purposes have been placed on three tracts of land owned by it in the assessments for the year 1949, there having been an increase for the year 1949 of ten per cent of the valuations on such lands as fixed for the year 1948. Bankers complains of the valuation fixed on one tract, designated as the "Vaughan lease", returned for taxation as containing 982.98 acres. The objection to the valuation

placed on that tract of land is based on the fact that the land was returned for taxation by the president and general manager of Bankers as 982.98 acres, whereas, in fact, said tract contains 808 acres, the return thus showing an excess of 174.98 acres.

The objections as to the two other tracts owned by Bankers are based on a comparison of the assessed valuations of said lands with other and similar lands owned by other persons, which are situate near or contiguous to Bankers land, such contiguous tracts of land being assessed at valuations less than the lands owned by Bankers. The second tract owned by Bankers, designated "No. 4 Orkney", containing 1,729.33 acres, is assessed for the year 1948, at $43.60 an acre, and the third tract, designated as "No. 2 Cletus and Blackstone", containing 1,336.46 acres, is assessed for the year 1948, at $35.97 an acre. The lands with which such two tracts are compared consist of nine tracts of land with assessment rates ranging from $2.21 an acres to $25.10 an acre, the average being $14.49 an acre.

Crozer makes like objections concerning ten tracts of land owned by it, which were assessed at various rates for the year 1949, ranging from $1.01 to $123.60 an acre, or an average of $72.10 an acre. The valuations placed on the Crozer land are compared with the valuations on eleven tracts of land owned by other persons, which range from .06 an acre to $6.06 an acre, or an average of $5.30.

No evidence was introduced as to the true and actual value of the lands owned by Bankers and Crozer; nor is there any evidence showing the true and actual value of the lands with which Bankers and Crozer are compared.

It is disclosed by the record that Bankers is receiving approximately eight thousand dollars a year as coal royalty, and an aggregate of three thousand dollars a year as delay rentals from lessees of oil and gas rights on its lands. Whether the coal royalty and delay rentals are derived solely from the lands here in question, or whether

they are derived from those lands and other lands belonging to Bankers is not entirely clear.

The record shows that the tracts of land owned by Bankers and Crozer are on or near the main line of the Norfolk and Western Railway Company; that Bankers' lands have a large number of houses on them; and that a considerable portion of Bankers' lands is within the corporate limits of the town of Davy, which was at the time of the hearing herein in process of being incorporated or had been incorporated, the record not being clear whether such incorporation had been completed at that time.

There is likewise proof that some of the tracts of land owned by Bankers and Crozer had a small amount of mineable coal, and that some of such coal was being mined on January 1, 1949.

Semet-Solvay Division of Allied Chemical & Dye Corporation, a corporation, was a party to the hearings before the County Court and the Circuit Court of McDowell County, but for some undisclosed reason, Semet-Solvay did not prosecute an appeal to this Court.

As indicated above, Bankers and Crozer assign as error the action of the Circuit Court of McDowell County in upholding the valuations of their lands, as fixed by the County Court and the Assessor of McDowell County, West Virginia. Bankers and Crozer in support of such assignment make four contentions: (a) That the valuations fixed by the circuit court violate the provisions of the Constitution of this State relating to equal and uniform taxation; (b) that such valuations are erroneous and arbitrary; (c) that the valuations should have been reduced to those fixed for comparable and similar lands; and (d) that the valuations of their lands are disproportionate to the valuations of similar and adjacent lands.

Boards of equalization and review having been abolished, county courts, in lieu of such boards, now meet not later than the fifth day of July of each year for the pur-

pose of reviewing and equalizing the assessments made by the assessor. Chapter 41, Article III, Section 24, Acts of the Legislature, Regular Session, 1933.

The statutory appeal to this Court provided for by Section 25, Article III, Chapter 41, *id.*, is limited, as indicated by the following language: "In tax cases, courts, as distinguished from administrative bodies, cannot properly consider the evidence of value, except in instances where it is plainly shown to have been arbitrarily and unjustifiably ignored, when the finding will be nullified." *Railway Co. v. Board*, 124 W. Va. 562, 567, 21 S. E. 2d 143. Fixing of the value of property for taxation purposes "is primarily an executive or administrative function with which the courts will not interfere unless shown plainly to have been abused." *Railway Co. v. Board, supra.* See *State v. McDowell Lodge*, 96 W. Va. 611, 612, 123 S. E. 561. As to the distinction between various questions on jurisdiction of courts, see *Lumber Co. v. Rose*, 87 W. Va. 484, 489, 105 S. E. 792.

Article V of the Constitution of West Virginia, providing that "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, * * *", if strictly applied would require that the statute, authorizing consideration of the question here presented, be held unconstitutional. But under the theory of contemporaneous construction, this Court has assumed jurisdiction of proceedings involving the valuation of property for taxation purposes. See *Railway Co. v. Board, supra,* and cases there cited.

Notwithstanding some indication to the contrary in the opinion in the case of *Crouch v. County Court*, 116 W. Va. 476, 181 S. E. 819, it is a general rule that the courts will not interfere with the exercise of the taxing power in the absence of "a clear showing of the arbitrary abuse of that power that amounts to a *mala fides* purpose to disregard

the principle of uniformity, or of practical confiscation." *Railway Co. v. Board, supra.* A similar rule is stated in *Coal Co. v. Bassett,* 108 W. Va. 293, 150 S. E. 745, where it is said that an order of the circuit court entered on an appeal in a proceeding of this nature will not be reversed "when supported by substantial evidence unless plainly wrong." See *In Matter of Sprinkle,* 122 W. Va. 611, 11 S. E. 2d 757. The burden is upon the property owner to establish as erroneous a valuation made by an assessor, if such valuation is fairly made. *Realty Co. v. Board of Review,* 110 W. Va. 437, 158 S. E. 537. It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. See *City of Roanoke v. Gibson* (Va.), 170 S. E. 723; *Wild Goose Country Club v. Butte County* (Cal. App.), 212 P. 711; *People v. Allyn* (Ill.), 65 N. E. 2d 392; *Sunday Lake Iron Co. v. Wakefield,* 247 U. S. 350, 62 L. ed. 1154, 38 S. Ct. 495.

In discussing the discrepancy between the actual acreage and that shown by the return of the "Vaughan" tract, we bear in mind the applicable statutes authorizing relief to a complaining taxpayer. Section 27 of Chapter 41, Acts of the Legislature, Regular Session, as amended and reenacted by Chapter 123, Acts of the Legislature, Regular Session, 1939, provides for relief of a taxpayer who is aggrieved by an entry on the property books "resulting from a clerical error, or a mistake occasioned by unintentional or inadvertent act, as distinguished from a mistake growing out of negligence or the exercise of poor judgment * * *". Chapter 22, Acts of the Legislature, Regular Session, 1939, authorizes a change in the land books. It is the position of Bankers that the "Vaughan" tract is valued on an acreage unit basis, or, to state it another way, the number of acres contained in said tract controls the total valuation of the entire tract; and that, when the discrepancy of 174.98 acres appears, the valuation should be corrected as a matter of course. There is considerable authority for the proposition that Bankers, through its president and general manager having made the return, is estopped from denying the ownership of the

total shown by the return. See *Pfeiffer* v. *City of San Antonio* (Tex.), 195 S. W. 932; Note 17 Anno. Cas. 1031, *et seq.; Union School District* v. *Bishop* (Conn.), 58 A. 13; 3 Cooley Taxation, 4th Ed., Section 1208; 51 Am. Jur., Taxation, Section 761.

In the absence of a statute authorizing correction of mistakes caused by inadvertence as above mentioned, we would be disposed to say that Bankers is estopped to deny its ownership of the 174.98 acres, as shown by its return. But in view of the provisions of Section 27, Chapter 41, *id.,* and Chapters 22 and 123, *id.,* we prefer to place our conclusion upon the broad ground that there are many elements entering into the valuation of the "Vaughan" tract. We do not know, nor can we ascertain from this record, the true and actual value of the "Vaughan" tract. Particularly is this true, when it is considered that such tract of land may have a number of houses on it; that it, together with other lands, is producing coal royalties and oil and gas delay rentals in substantial amounts; that it is accessible to the main line of the Norfolk and Western Railway; and that it is adjacent to populous communities, all of which enter into the valuation of land. It cannot be said from this record that the valuation placed on the "Vaughan" tract, even excluding the 174.98 acres, exceeds its true and actual value. *Morris Canal and Banking Co.* v. *Haight, Collector,* 35 N. J. L. 178. Bearing in mind the restricted nature of this review and the presumption hereinabove adverted to, there is no error in the circuit court's action in refusing to lower the valuation of the "Vaughan" tract as fixed by the assessor.

With certain exceptions the organic law of this state requires that "taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law * * *." Article X, Section 1, Constitution of West Virginia. Since the adoption of the classification amendment to the Constitution of this State on August 10, 1932, this Court has considered the question of uniform and equal taxation. In *Christopher* v.

*James,* 122 W. Va. 665, 12 S. E. 2d 813, in which a deficiency assessment of State income tax was considered, the Court in relation to the constitutional requirement of equality and uniformity in taxation made the following pertinent statement: "That provision means merely that as to classes of property, businesses or incomes there shall be uniformity of taxation." The foregoing statement in the *Christopher* case was approved in *In Re: Loan Association,* 125 W. Va. 426, 434, 25 S. E. 2d 543. The same principle was likewise upheld in *In Re: Tax Assessments,* 126 W. Va. 506, 30 S. E. 2d 513. The judgment of this Court in *In Re: Tax Assessments, supra,* was affirmed by the Supreme Court of the United States. *Charleston Federal Sav. & Loan Ass'n.* v. *Alderson,* 65 S. Ct. 863, 324. U. S. 182, 89 L. ed. 857. It is well established law in this jurisdiction that the equality and uniformity of taxes are confined to a species of property rather than all taxable property in a taxing unit.

We cannot determine whether the valuations fixed on the lands of Bankers and Crozer result in inequality or lack of uniformity when compared with other lands, since the record is silent as to the true and actual value of the Bankers and Crozer lands, as well as the lands with which there is an attempt to compare them. All property is required to be assessed annually as of January first at its true and actual value. Section 1, Article III, Chapter 40, Acts of the Legislature, Regular Session, 1933.

When there is a showing, as in the case of *Power Co.* v. *Board of Review,* 112 W. Va. 442, 164 S. E. 562, that property has been taxed on the basis of one hundred per cent of its true and actual value, and that all other property of the same species in the same taxing unit is assessed on a basis less than the true and actual value the assessment on the lands of a complaining taxpayer should be reduced. The opinion in *Power Co.* v. *Board of Review, supra,* may be of doubtful force and effect, in view of the comment made in this Court's opinion in *In Re: Tax Assessments, supra.* But, giving the opinion in the case of *Power Co.*

v. *Board of Review, supra,* full force and weight, Bankers and Crozer have not brought their lands within the purview of the holding in that case. The evidence in this proceeding is not sufficient to show that there was a general plan relating to the valuation of lands similar to the lands here considered. Hence, no reduction of the valuation of Bankers' and Crozer's lands can be predicated upon the theory enunciated in *Power Co.* v. *Board of Review, supra.*

The contention that the valuations fixed by the assessor of McDowell County. are arbitrary is not sustained by the record. We therefore dismiss that contention by averting to the presumption hereinabove mentioned with reference to such valuations.

"Sporadic deviations from an established rule in the case of other properties are not in themselves sufficient. A petitioner must show that the plan adopted generally was not applied to him." *City of Roanoke* v. *Gibson, supra.* Though we do not approve deviations from the constitutional standards of uniformity or equality, we think that even if there should be deviations in a few instances from the standard as to assessed valuations of similar lands, it would not be a sufficient premise on which to conclude that the valuations of Bankers' and Crozer's lands should be reduced.

It is not exactly clear what is meant by the contention that the valuations on the lands of Bankers and Crozer are disproportionate to the valuations of other lands for taxation purposes. We reiterate that the true and actual value of the lands here considered, or the lands with which they are compared, is not shown.

We also reiterate that many elements enter into the valuation of lands, and that such valuations are fixed opinions in the last analysis. Of course, such opinions must be reasonable and based upon conditions which would add to or detract from, the valuation of a certain tract of land. We are not shown any factor or condition

which indicates that the value of the Bankers and Crozer lands is disproportionate to other lands, unless it is the fact that mineable coal underlying such lands has been almost exhausted, and in other lands with which there is an attempt to compare them there is a like exhaustion. It may be, for all we know, that elements and factors of valuation exist and were considered in the valuation of Bankers' and Crozer's lands which do not exist as to the lands with which they are compared. In other words, Bankers and Crozer have only shown one element or factor of valuation as to their lands and the lands of other landowners.

Accordingly, the judgment of the Circuit Court of Mc-Dowell County is affirmed.

*Affirmed.*