*In Re:* ASSESSMENT OF UNION CARBIDE CORPORATION

(No. 13287)

*In. Re:* ASSESSMENT OF AMHERST COAL COMPANY

(No. 13288)

*In Re:* ASSESSMENT OF EASTERN ASSOCIATED COAL CORP.

(No. 13289)

*In Re:* ASSESSMENT OF CHESAPEAKE MINING COMPANY

(No. 13290)

Submitted January 16, 1974.     Decided March 19, 1974.

*Patrick Casey,* Prosecuting Attorney, *Steven C. Hanley,* Assistant Prosecuting Attorney, for petitioner.

*Jackson, Kelly, Holt & O'Farrell, Lee O. Hill and Forrest Roles* for respondent.

NEELY, JUSTICE:

This is a tax appeal by the Kanawha County Assessor from a judgment of the Circuit Court of Kanawha County

which reversed the Kanawha County Court. The Kanawha County Court, sitting as a Board of Equalization and Review had affirmed the assessor's valuation of certain coal properties in Kanawha County, and the coal companies appealed to the Circuit Court, which entered a revised assessment. As the cases present common questions of law and fact, they were argued together both in the Circuit Court and in this Court.

In late October 1970 the Kanawha County Assessor sent a complex questionnaire, known as form KCM-170 to all owners of tracts of land of 250 acres or more in Kanawha County. On November 19, 1970 the assessor extended the time for completing the form until December 15, 1970 and deleted some questions which had previously been asked. Amherst Coal Company replied that its property was not underlain with any minable or merchantable coal; Eastern Associated Coal named its seams and its production from them, but failed to complete other data on the questionnaire; Union Carbide returned its form to the substantial satisfaction of the assessor although some questions were not answered; and Chesapeake Mining supplied information concerning only one minable and merchantable seam of coal and deleted or entered "unknown" on other questions.

On February 1, 1971 the assessor notified the coal companies of drastically increased coal assessments over 1970 based upon a complex income capitalization formula. The following are the assessments for 1970 and 1971:

|  | 1970 | 1971 |
|---|---|---|
| Amherst | 34,750 | 500,120 |
| Carbide | 1,204,100 | 15,847,277 |
| Eastern | 546,010 | 9,816,850 |
| Chesapeake | 51,100 | 552,000 |

After meeting with the coal companies on February 4, 1971, the assessor advised the companies that some assessments would be changed, and on February 22,

1971 some assessments were changed and all assessments were reduced by twenty percent. The coal companies hastily appealed to the County Court, sitting as a Board of Equalization and Review, and hearings began on February 24, 1971. As the County Court lacks jurisdiction to sit as a Board of Equalization and Review after the 28th day of February, under Chapter 11, Article 3, Section 24 of the *Code of West Virginia,* 1931, as amended, there were only four days available for the prosecution of these appeals, and consequently, only the Amherst case was heard. The records of the other cases were stipulated on the basis of the record made in the Amherst case.

On March 22, 1971, the County Court found the assessments correct and approved the assessor's income capitalization formula. On March 29, 1971 the coal companies appealed to the Circuit Court of Kanawha County, and on January 28, 1972 the Circuit Court ruled that the valuation was in excess of the true and actual value of the coal and fixed the correct assessment at the following:

| | |
|---|---:|
| Amherst | $ 91,000 |
| Carbide | 1,312,618 |
| Eastern | 1,529,868 |
| Chesapeake | 55,120 |

During the hearings before the County Court the assessor moved the court to dismiss the appeals on the grounds that the taxpayers had failed to answer all questions asked by the assessor in form KCM-170, and therefore, under Chapter 11, Article 3, Section 10 of the *Code of West Virginia,* 1931, as amended, the taxpayers were precluded from invoking any remedies against an allegedly erroneous assessment. The Circuit Court found that as the County Court had failed to rule upon this motion to dismiss, the motion was not properly before the Circuit Court on appeal.

As a result of the unique nature of these cases, this Court has been directed to a multiplicity of procedural errors in the hearing before the County Court which

are without recorded precedent in this State and which are unlikely ever to occur again. Procedural irregularities on each side, such as the assessor's failure to complete his work in a timely manner, the complex, innovative questionnaire, and the failure of the companies to answer the questions accurately, inspired and reinforced additional procedural errors with the result that any attempt to disentangle the procedural muddle would only lead to total obfuscation of the law concerning tax appeals. Remand to the County Court for a proper disposition of the case is impossible, as by the terms of *Code,* 11-3-10, the Board of Equalization and Review ceases to exist for any tax year on the 28th day of February of that tax year. *In re: Morgan Hotel Corp.,* 151 W.Va. 357, 151 S.E.2d 676 (1966). Accordingly this Court holds that none of the procedural errors in this case is fairly raised, and that the case was properly before the Circuit Court of Kanawha County on appeal.

While the ascertainment of the value of property for tax purposes " . . . is primarily an executive or administrative function with which the courts will not interfere unless shown plainly to have been abused," *Norfolk and Western Railway Company v. The Board of Public Works,* 124 W.Va. 562, 568, 21 S.E.2d 143, 146 (1942), it is also the rule that when arbitrary or unjust action by an assessor in ascertaining value can be shown by clear and cogent proof, the complaining taxpayer may be given relief from a demonstrably excessive valuation, *Bankers Pocahontas Coal Company v. County Court of McDowell County,* 135 W.Va. 174, 62 S.E.2d 801 (1950). In these cases at bar the assessor was unable adequately to justify or explain his use of the income capitalization formula. On direct examination the assessor frequently referred the taxpayer's attorney to his deputy, Mr. Jack Cole, whose testimony the County Court refused to admit upon the grounds that Mr. Cole was not an expert in the valuation of the coal property.

Upon the records presented to the Circuit Court, the Circuit Judge found as follows:

". . . I am of opinion that upon the evidence in each of the records before me, the Assessor has utterly failed to demonstrate [the formula's] reliability and/or credibility for such purpose. Moreover, the Assessor's refusal to answer several questions regarding information employed by him in the application of said formula made it impregnable to legitimate inquiry upon cross-examination. Under these circumstances I am of opinion that the formula, to the extent that it has been used as the only means of establishing true and actual value, has been impeached and cannot, in and of itself, sustain the assessments. Consequently, since the only credible evidence of value in these records is that of the individual petitioners, if such evidence is sufficient to overcome the presumption as to the correctness of the assessment, and, also, adequate to furnish me with a sufficient basis upon which to fix the true and actual value, I am of opinion to do so in each of these cases."

This finding by the Circuit Court is supported by a clear preponderance of the evidence.

As this Court will not reverse an order of a Circuit Court with regard to the valuation of property for tax purposes except for an error of law or where the court's action was clearly not supported by a preponderance of the evidence, *Western Maryland Railway Company v. The Board of Public Works, supra,* and as the appeal was properly before the Circuit Court, the judgment of the Circuit Court of Kanawha County is affirmed.

*Judgment affirmed.*

Justice Haden, deeming himself disqualified, did not participate in the decision of these cases.