*In Re: Tax Assessments Against* POCAHONTAS
LAND CORPORATION, *a corporation*

(No. 13433)

*and*

*In Re: Tax Assessments Against* POCAHONTAS
LAND CORPORATION, *a corporation*

(No. 13434)

Decided December 17, 1974.

230

*Paige Wooldridge, Lynn C. Johnson and Ernest F. Hays, II* for appellant.

*D. Grove Moler, Paul R. Goode, Jr.,* Prosecuting Attorney for appellee.

BERRY, JUSTICE:

Pocahontas Land Company, the appellant, hereinafter referred to as the appellant, appeals from two final judgments of the Circuit Court of Wyoming County entered December 29, 1972 and June 11, 1973 wherein the circuit court held that the county court sitting as a board of equalization and review was correct in upholding the county assessor's 20% increase in the assessments of the appellant's Class III property in Wyoming County. The appellant had filed its return for the 1972 tax year listing the real property it owned in Wyoming County with its statement of the properties' true and actual value. The assessor of Wyoming County increased the amount of the assessments by 20% across the board on all Class III property owned by the appellant. The assessor increased the assessment of the appellant's property in 1973 in the same manner and the appellant protested the actions of the assessor in both cases. On December 3, 1973 this Court granted the appellant's two appeals from the judgments of the Circuit Court of Wyoming County and on September 17, 1974 the case was submitted for decision upon the briefs and oral arguments on behalf of

the respective parties. For all practical purposes the issues and the facts in both appeals are identical; therefore, both appeals are consolidated for disposition.

It appears from the voluminous record that for the tax year 1971 in Wyoming County, according to the "Study of Property Evaluations in West Virginia" of the State Tax Commissioner, Class I property was assessed at 53.54% of appraised value; Class II property was assessed at 51.34%; Class III property was assessed at 59.18%; Class IV property was assessed at 49.75%. Subsequently, for the 1972 tax year the appellant filed its tax return setting forth the quantity, location and true and actual value of all its real property using the same value of its real property that was accepted by the assessor for the 1971 tax year. However, the appellant and twenty-nine other large mineral and landowners in Wyoming County were informed by Malcolm Arnold, the assessor for Wyoming County, that the appellant's real property, as well as that of the others, would be assessed at a 20% increase over the assessments for 1971. The appellant was the largest real property owner in the county and the appellant and the other twenty-nine large landowners in the county owned the majority of the minerals and surface lands in the county. The 20% increase in their assessments amounted to $3,128,640 and the appellant's increased assessment amounted to $1,653,000 of that total, or more than half. These increased assessments raised approximately $77,000 in additional tax revenue for Wyoming County.

The appellant contends that since $3,128,640 is 20% of $15,643,200, which is the amount the thirty real property owners were assessed in 1971, and the state tax commissioner's report for 1971 shows that all Class III real property in the county was assessed at a total of $27,968,840 for 1971, the real property owners who were assessed at approximately $12,325,640 in 1971 were not subjected to the 20% increased assessment. However, the appellees counter with the argument that if one subtracts the total increased assessments of 20% applied to the thirty real property owners from the total amount

assessed by the assessor for all Class III real property in 1972 the remainder is approximately $208,000 more than the amount assessed to all Class III real property owners in 1971. Therefore, it appears that some of the remaining landowners were apparently assessed at a slightly increased rate for 1972 although far less than the 20% increase applied to the appellant and the other large landowners.

The record reveals the following assessments in Wyoming County:

|          | 1966   | 1967   | 1968   | 1969   | 1970   | 1971   |
|----------|--------|--------|--------|--------|--------|--------|
| Class I  | 89.51% | 59.31% | 58.04% | 55.60% | 54.07% | 53.54% |
| Class II | 29.82% | 31.82% | 39.85% | 52.98% | 51.35% | 51.34% |
| Class III| 90.77% | 53.73% | 57.21% | 58.50% | 56.84% | 59.18% |
| Class IV | 43.43% | 29.52% | 34.67% | 41.21% | 49.65% | 49.75% |

Mr. Arnold, the assessor, testified that he increased Class II and Class IV properties in the years 1967, 1968 and 1969 to bring those assessments up to a minimum of 50% as required and directed by the state tax commissioner in order for the county to comply with the legal requirements for the state aid to school formula which requires that all property be assessed at not less than 50% of appraised value. Mr. Arnold testified that he spread the increases for residential homeowners over the three year period in order that the assessments in any one year would not be too great an increase for the individual taxpayer. Mr. Arnold testified that he felt justified in raising the large landowners' assessments because of the large percentage increases in residential homeowners' assessments over the previous years. Mr. Arnold stated the reason for choosing a 20% increase as: "Well, it seems to me like, in view of what went on in other classifications of property in Wyoming County, that that was the most reasonable figure to use to accomplish what was needed and still be fair and equitable to the company as well as the county, and, of course, that is the reason I chose to use that figure." The assessor also published an advertisement in the newspaper in Wyoming County prior to the appellant's protest which

made the following statement: "We don't feel justified in seeing real estate assessments doubled in some cases and tripled in other cases under the State reappraisal of the homeowners' property while the absentee landlords' assessments remain the same as before the reappraisal."

For the year 1972 Class III property was assessed at 66.08% of appraised value while Class II and Class IV were assessed at 50.89% and 52.14% respectively. The appellant contends that these figures reveal that the assessor systematically and intentionally discriminated against the large landowners of Class III property, especially since not all Class III property owners were assessed an additional 20%. Therefore, the thirty large property owners whose property assessments were increased 20% were actually being assessed at 71% of appraised value assuming that all Class III taxpayers were being assessed at the 59.18% rate for 1971. Moreover, the appellant contends that since Class III property was already being assessed at a higher percentage of appraised value for 1971 than Class I, Class II and Class IV property, the 20% increase was unjustified and discriminatory as to the appellant's Class III property.

The appellant protested the increased assessment for 1972 but the county court, sitting as a board of equalization and review, found that the appellant did not affirmatively show that it had been discriminated against and the assessments were upheld. The Circuit Court of Wyoming County held that the county court was correct except as to the increased assessments for Class IV property of the appellant which was located within the corporate limits of municipalities in Wyoming County. The appellant appealed to this Court from the decision concerning its Class III property assessment.

The county assessor also used the same assessment of the appellant's land for the year 1973 which was an increase over the 1971 assessments of 20% and the appellant also protested that assessment, but the assessment was upheld by the county court and the circuit

court. The appellant subsequently appealed that decision to this Court and the appeals were consolidated.

The order of the county court upholding the 1973 assessments stated that the county court adopted the findings of fact and law of the decision of the county court in the protest of the 1972 assessments with the exception of Class IV property. However, in the 1972 protest the county court had asked the prosecuting attorney of Wyoming County to prepare a "decision" for the court despite the fact that the prosecuting attorney had been the attorney of record representing Wyoming County during the protest.

The assignments of error are numerous and are lengthy, repetitious and confusing for each appeal. The assignments may be condensed as follows: 1) The court erred in not finding that the application of the 20% increase to the assessments of the appellant's property was arbitrary, capricious and discriminatory and did not constitute an assessment as required by law; 2) the court erred in not holding that the assessor had violated the equal and uniform provision for taxation required by Article X, Section 1, of the Constitution of West Virginia by virtue of the fact that all Class III real property had not been increased in the same manner in 1972 and 1973 and that appellant's property was assessed higher than property in other classes in Wyoming County and that such action violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States; 3) the court erred in not finding that the county court had unlawfully delegated its duty to the prosecuting attorney with regard to preparing the decision of the county court acting as a board of equalization and review and that the county court was an improper body to hear the matter because of its fiscal responsibility for the county, all of which was in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States; 4) the court erred in not finding that Code, 11-3-25, as amended, providing for an appeal for nonutility property own-

ers from the board of equalization and review to the circuit court is in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because it does not provide for a *de novo* hearing on appeal to the circuit court as does Code, 11-6-12, as amended, for utility property assessments.

The first assignment of error is well taken. There is no evidence in this case that any assessment of the appellant's property was made by the assessor by viewing the land and ascertaining in any manner the amount of minerals remaining in or under the appellant's property. There was evidence that part of the appellant's coal property had been mined out but apparently no consideration was given by the assessor to this fact. The only basis for the alleged assessment in 1972 and 1973 for the appellant's property was the arbitrary increase of 20% over the 1971 assessment. This does not constitute a proper method of assessment. *See, In Re Tax Assessments Against the Southern Land Co.,* 143 W. Va. 152, 100 S.E.2d 555 for proper method of assessment. The arbitrary use of percentage applications is not a proper method to be used for assessment purposes. This is clearly stated in Code, 18-9A-11 wherein the pertinent part thereof reads as follows: "The county assessor and the county court shall comply with the provisions of chapter eleven [11-1-1 et seq.] of this Code in determining the true and actual value of property for assessment purposes and shall not arbitrarily use a direct percentage application to the appraisal valuations, whether complete appraisal or spot survey, of any class of property or property within a class for such purpose."

It is the contention of the appellee that there is a presumption in favor of the correctness of the assessment made by the assessor and that the appellant had not borne the burden of proving that the assessments made by the assessor for 1972 and 1973 were incorrect. However, there must be a proper assessment before there can be a presumption that the assessment is correct, and where it appears that there was no proper assessment there can be no presumption in favor of the

correctness of the assessment. Therefore, the burden was not on the appellant to show by a preponderance of the evidence that the assessments were erroneous. *Consolidated Gas Co. v. Mayor, Etc. of Baltimore*, 101 Md. 541, 61 A. 532 (1905). It is clear from the testimony of the assessor at the hearing before the board of equalization and review that the attempted assessment was made in a discriminatory manner. He stated it was tentatively estimated that the county needed $77,000 in additional tax revenue, that an increased valuation of property in the county in the amount of $3,128,640 would produce the additional revenue and that an increase of 20% of the assessed valuation of the thirty real property owners would produce the increased valuation necessary to obtain the additional revenue.

The second assignment of error is the principal assignment relied on by the appellant. Article X, Section 1, of the Constitution of West Virginia provides in part: "* * * taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; * * *." The systematic plan of assessment of the appellant's property and twenty-nine other similar real property owners in Wyoming County whereby their assessments were increased 20% while other property in the same class was not increased 20% certainly does not conform to equal and uniform taxation as required by the Constitution of West Virginia.

The uncontradicted evidence in this case shows that in 1971 all property in Class III was assessed at about 59% of its appraised value which was a higher percentage of assessment than any other class of property in Wyoming County. With the 20% increase on the thirty real property owners systematically selected by the assessor the average of all property in Class III was assessed at about 66% of its appraised value. However, the 20% increase was placed only on the thirty property owners

and their property was assessed at about 71% of its appraised value assuming that all Class III property was uniformly assessed at 59.18% in 1971. The assessor's attempted justification for increasing the thirty property owners whom he stated were "absentee landowners" by 20% was that he had increased the assessment of Class II taxpayers in Wyoming County in 1967, 1968 and 1969 at a much higher percentage. These increases in assessments were made at the direction of the state tax commissioner and the assessor was compelled to make these increases or the county would lose certain revenue sharings from the state. However, the property involved had been assessed at a very low valuation and the increases were made in an attempt to raise the assessments to 50% of their appraised valuation. Thus, it is clearly shown by the evidence in this case that the principle enunciated in the case of *In Re Assessment of Kanawha Valley Bank*, 144 W. Va. 346, 109 S.E.2d 649 (1959) was clearly violated and the requirements of Article X, Section 1 of the Constitution of West Virginia were not met. In the *In Re Assessment of Kanawha Valley Bank* case it was held that no one species of property could be assessed at a substantially higher percentage of its actual value than that at which other species of property of equal value were assessed without violating Article X, Section 1, of the Constitution of West Virginia. This principle is clearly stated in point 6 of the syllabus of the *In Re Assessment of Kanawha Valley Bank* case, in the following language:

> Where there is a systematic plan to assess all property of a certain species at a particular per centum of its value, substantially less than actual value, a showing that there were sporadic variations to the plan of assessment will not deprive the owner of property of another species of his right to relief, under the provisions of Section 1, Article X, of the Constitution of this State, where the property of the latter was assessed at a substantially higher per centum of actual value than the approximate level of valuation of the other species of property of equal value.

In the case of *White River Lumber Co. v. State*, 175 Ark. 956, 2 S.W.2d 25 (1928) it was held that to assess a taxpayer's property at 50% of its market value whereas other property in the same county had been assessed at only 30% of its value was a violation of the pertinent provisions of the Constitution of Arkansas, which are similar to the Constitution of this State. In the case of *Greene v. Louisville & Interurban R. Co.*, 244 U.S. 499, 37 S. Ct. 673, 61 L. Ed. 1280 (1917) it was held by the Supreme Court of the United States, in construing a provision of the Constitution of Kentucky that all property shall be taxed in proportion to its value, that the provision was violated by assessing the property of the taxpayer at 75% of its actual value while other taxable property in general was assessed systematically and intentionally at not more than 52% of its actual value.

It is true that variations in assessments may be made by the assessor without violating the equal and uniform provision of the Constitution, because perfection is not expected of an assessor or the county court acting as a board of equalization and review. Generally, sporatic deviations from an established rule in connection with assessments are not sufficient to violate the equal and uniform provision of the Constitution of West Virginia. *In Re Assessment of Kanawha Valley Bank, supra; Bankers Pocahontas Coal Co. v. County Court*, 135 W. Va. 174, 62 S.E.2d 801 (1950). The ascertainment of the value of property for the purpose of assessment and taxation is primarily an executive or administrative function and the courts will not interfere with such assessments unless they clearly violate the constitutional provision regarding equal and uniform taxation of property. Variations in assessments will not be considered unless the presumption of correctness is clearly rebutted by the evidence introduced by the taxpayer. *In Re Tax Assessments Against the Southern Land Co., supra; Bankers Pocahontas Coal Co. v. County Court, supra.* However, where it is clear, as in the case at bar, that the assessor systematically discriminated against the appellant and violated the equal and uniform provision of Article X,

Section 1, of the Constitution of West Virginia such assessments are illegal and cannot stand. *In Re Assessment of Kanawha Valley Bank, supra.*

The third assignment of error deals with the alleged improper delegation of duties by the board of equalization and review and the board being an improper body to hear such cases because of its fiscal responsibilities to the county. However, it is not necessary to consider this assignment of error because of the holding heretofore made, although it appears that due process was complied with at the hearing before the board of equalization and review. Moreover, the circuit court did not rule on this question in disposing of the case in that court.

The fourth assignment of error contending that it was a denial of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because Code, 11-3-25, as amended, under which this appeal was taken to the circuit court, did not contain a provision for a trial *de novo* as provided in Code, 11-6-12, as amended, for appeals to the circuit court from assessments of utility property made by the Board of Public Works, is not necessary for the disposition of this case because of the holdings heretofore made. This question was also not considered or ruled on by the circuit court.

The third and fourth assignments of error pertain to constitutional questions and it has been repeatedly held that when it is not necessary in the decision of a case to determine a constitutional question this court will not consider or determine such question. *State ex rel. Christian v. St. Clair*, 153 W. Va. 1, 166 S.E.2d 785 (1969); *State ex rel. Titus v. Hayes*, 150 W. Va. 151, 144 S.E.2d 502 (1965); *State v. Garner*, 128 W. Va. 726, 38 S.E.2d 337 (1946).

Since it clearly appears that the attempted assessment imposed a discriminatory burden of taxation upon the appellant which clearly violated the equal and uniform provision of Article X, Section 1 of the Constitution of this State inasmuch as the appellant's property assessment was arbitrarily increased 20% more than other

property in the same class and other classes of property, this case must be reversed. However, this Court does not have the authority to fix the assessment of appellant's property in order to relieve it of such discrimination but the trial court is invested by statute with such authority and the case will be remanded for that purpose.

For the reasons stated herein, the judgments of the Circuit Court of Wyoming County are reversed and these cases are remanded to that Court for further proceedings in accordance with the principles stated herein.

*Reversed; remanded for further proceedings.*