IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 23-ICA-372

_____

FILED

November 14, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

THE SILVER CREEK ASSOCIATION, INC, ET AL.,
Petitioners Below, Petitioners

v.

MATTHEW IRBY, in his official capacity as State Tax Commissioner of the
State of West Virginia, AND JOHNNY PRITT, in his official capacity as
Assessor of Pocahontas County, West Virginia,
Respondents Below, Respondents.

_____

Appeal from the Circuit Court of Pocahontas County
The Honorable Robert E. Richardson, Judge
Civil Action No. CC-38-2020-P-31

REVERSED

_____

Submitted: September 17, 2024
Filed: November 14, 2024

Mark A. Sadd, Esq.
Lewis Gianola, PLLC
Charleston, West Virginia
Counsel for Petitioners

Patrick Morrisey, Esq.
Cassandra L. Means-Moore, Esq.
Seth E. Harper, Esq.
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent Matthew Irby

Robert P. Martin, Esq.
Marlinton, West Virginia
Counsel for Respondent Johnny Pritt

JUDGE CHARLES O. LORENSEN delivered the Opinion of the Court.

LORENSEN, JUDGE:

Petitioners Russell D. and Cinnamon M. Jessee, Jeffrey S. and Drenna Banks, Malcolm J. and Colleen K. Cooper, Duval Lee and Dorthea A. Fuqua, Raymond Bruce James and Harriet Hawks, Louis J. Constanzo, David and Linda Christopher, William C. White, II, William R. and Mary L. Terrini, Michael D. and Jennifer L. Cajohn, and Kevin R. Banning (individually, a "Petitioner Owner" and collectively "Petitioner Owners") and Petitioner The Silver Creek Association, Inc. (the "Association") appeal a July 24, 2023, order of the Circuit Court of Pocahontas County granting summary judgment to Respondents, Matthew Irby, West Virginia State Tax Commissioner, and Johnny Pritt, Pocahontas County Assessor. The circuit court upheld the Tax Commissioner's ruling that Petitioner Owners' condominium units did not qualify as Class II properties[1] but instead were properly classified as Class III for ad valorem property tax purposes for property tax year 2021.

After careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we disagree with the circuit court's affirmation

---

[1] Reflecting the property classification system established by Article X, Section 1 of the West Virginia Constitution, the Legislature provides the scheme under which taxable property is classified in Classes I–IV. *See* W. Va. Code § 11-8-5 (1961). Classes II and III are at issue in this case. Class II properties are owned, used, and occupied by the owner exclusively for residential purposes, and Class III properties are all properties outside a municipality, other than Class I or Class II property. Class III property is subject to a higher tax rate than Class II property.

1

of the Tax Commissioner's Property Tax Ruling 21-16 which found that the West Virginia Uniform Common Interest Act ("Uniform Act") prohibits "split ticket" classifications and assessments of Petitioner Owners' condominium units where, as here, Petitioner Owners use their units exclusively as owner-occupied residences, but a part of the common elements of the condominium are used for commercial purposes. Accordingly, we reverse the circuit court's July 24, 2023, order and find that property comprising each Petitioner Owner's units is entitled to Class II property classification for property tax year 2021.

## I. FACTUAL AND PROCEDURAL HISTORY

The Lodge at Silver Creek ("Lodge") on Snowshoe Mountain in Pocahontas County, West Virginia, is a condominium building containing 239 residential units, eight commercial units, and common elements.[2] The Lodge is a common interest community subject to the Uniform Act, and the Association is the common interest community's unit owners' association under the Uniform Act. Approximately ten percent of the Lodge's residential units are used by their owners exclusively for their own residential purposes and not held out for rental to third-party guests. Petitioner Owners are among this group of unit owners who do not hold their condominium units out for rent to third-party guests.

---

[2] "'Common elements' means… all portions of the common interest community other than the units…." W. Va. Code § 36B-1-103(4) (1998).

For property tax purposes, the units in the Lodge that are held for rental to third-party guests have been and continue to be considered Class III properties because their owners are not individuals who own, use, and occupy their units exclusively for their own residential purposes. However, prior to the events discussed below, the Petitioner Owners' units were classified as Class II properties as they were not rented and were owned, used, and occupied exclusively for Petitioner Owners' own residential purposes. This case concerns the classification, assessment, and taxation of the Petitioner Owners' units because a portion of the Lodge, which recently became a part of the Lodge's common elements, was used to operate a commercial bar and grill called "The Locker Room" open to the public, generally.

The Association litigated with Snowshoe Mountain Inc. ("Snowshoe") concerning the ownership of a commercial area in the Lodge now used as The Locker Room (the "Commercial Space"). Snowshoe claimed that the Commercial Space was not a part of the common interest community but was rather owned separately by Snowshoe outside the scope of the common interest community. Snowshoe and the Association reached a settlement in 2016 pursuant to which Snowshoe transferred the Commercial Space to the Association and the Commercial Space was expressly included as common interest community property owned by the Association in a restated declaration. Prior to the settlement, the Commercial Space was, for ad valorem tax purposes, separately classified, assessed, and billed to Snowshoe.

After the settlement, the Pocahontas County Assessor classified, assessed, and billed the Association separately for the Commercial Space. However, on February 14, 2018, the Association and the Pocahontas County Assessor jointly requested a property tax ruling from the Tax Commissioner pursuant to West Virginia Code § 11-3-24a (2010) concerning whether the Commercial Space should be classified, assessed, and billed to the Association or to the unit owners. The Tax Commissioner issued Property Tax Ruling 18-49 on February 26, 2018, finding that the Association was a successor declarant of the condominium and that the Association should be taxed separately for the Commercial Space, which the Tax Commissioner considered a condominium unit. The Association appealed Property Tax Ruling 18-49 to circuit court.

On January 4, 2019, the Circuit Court of Pocahontas County reversed Property Tax Ruling 18-49 and found that the Association was not a successor declarant under the Uniform Act, and that the Commercial Space was not a *unit* but instead the Commercial Space constituted a *common element* of the common interest community that, pursuant to West Virginia Code § 36B-1-105(b)(2) (1986), could not be classified, assessed, and billed separately to the Association.

Based upon the 2019 circuit court order, the Pocahontas County Assessor began assessing ad valorem taxes using the Class III rate for the Petitioner Owners on their condominium units based on the Petitioner Owners' fractional interest in the Commercial

4

Space as part of the common elements of the Lodge. The change significantly increased Petitioner Owners' tax liability and Petitioner Owners objected. The Assessor again sought a ruling under West Virginia Code § 11-3-24a, and the Tax Commissioner issued Property Tax Ruling 21-16 finding that the Petitioner Owners' units were properly classified as Class III property based not on their use of the units but upon their fractional interest in the Commercial Space. The Tax Commissioner determined that the Uniform Act prohibited split tickets that would enable separate classification for the condominium units, on one hand, and the Commercial Space, on the other.

Petitioner Owners and the Association appealed the ruling to circuit court, which affirmed the ruling and analysis of the Tax Commissioner in Property Tax Ruling 21-16 and otherwise dismissed Petitioner Owners' challenges to tax year 2019 and 2020 classifications. The Petitioner Owners and the Association now appeal the circuit court order's ruling regarding the 2021 tax year[3] to this Court.

## II.    STANDARD OF REVIEW

"In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the

---

[3] On appeal, Petitioners do not contest the circuit court's dismissal of claims concerning tax years 2019 and 2020 based on the circuit court's finding that it lacked subject matter jurisdiction over those tax years.

5

ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Appalachian Emergency Medical Services, Inc. v. State Tax Com'r*, 218 W. Va. 550, 553, 625 S.E.2d 312, 315 (2005) (quoting Syl. Pt. 2, *Walker v. West Virginia Ethics Com'n,* 201 W. Va. 108, 492 S.E.2d 167 (1997)). With this standard in mind, we now consider the issue before us.

## III. DISCUSSION

Petitioners assign three errors to the circuit court's July 24, 2023, order. The first assignment of error is that, by prohibiting Petitioner Owners from taking advantage of split ticket assessments, the order violates Section 1, Article X of the West Virginia Constitution, which requires equal and uniform property taxation. The second assignment of error is that the circuit court erroneously found that the Uniform Act prohibits split ticket use classifications. The third assignment of error is that the circuit court's order failed to treat condominium real estate ownership the same as other fee forms of ownership in violation of West Virginia Code §§ 36B-1-105(b)(1) and 36B-1-106(b) (1986), and other provisions of West Virginia law. We find merit in Petitioners' second and third assignments of error and reverse the circuit court's order on statutory construction grounds.

Accordingly, we find it unnecessary to address Petitioners' constitutional challenge to the circuit court's order.[4]

The West Virginia Legislature enacted the Uniform Act in 1982 "to make uniform the law with respect to [common interest communities] among states enacting it." W.Va. Code § 36B-1-110 (1986). The Uniform Act "governs the formation, management, and termination of a common interest community, whether that community is a condominium, planned community, or real estate cooperative." *Foster v. Orchard Dev. Co. LLC*, 227 W. Va. 119, 121 n.2, 705 S.E.2d 816, 818 n.2 (2010) (citation omitted). The Uniform Act is a product of the National Conference of Commissioners on Uniform State Laws (Uniform Law Commission)[5] to "do all in their power to promote uniformity in state laws, upon all subjects where uniformity may be deemed desirable and practicable." W.Va. Code § 29-1A-4 (1931).

The circuit court, affirming the Tax Commissioner's Property Tax Ruling 21-16, found that West Virginia Code § 36B-1-105(b) prohibits a split ticket property

---

[4] "When it is not necessary in the decision of a case to determine a constitutional question, this Court will not consider or determine such question." Syl. Pt. 5, *In re Tax Assessments against Pocahontas Land Corp.*, 158 W. Va. 229, 210 S.E.2d 641 (1974). *See also Davis v. Mound View Health Care, Inc.*, 220 W. Va. 28, 29 n.2, 640 S.E.2d 91, 92 n.2 (2006).

[5] West Virginia is a participant in the National Conference of Commissioners on Uniform State Laws. *See* W. Va. Code § 29-1A-1, *et seq.*

assessment for condominium units governed by the Uniform Act. Petitioners argue that the Uniform Act does not prohibit the application of general provisions of tax law enacted by the Legislature pursuant to Section 1, Article X of the West Virginia Constitution to classify property to reflect multiple uses of that property to give effect to West Virginia's constitutionally established classification system for ad valorem tax purposes. We agree.

Pursuant to Article X, Section 1 of the West Virginia Constitution, the Legislature enacted West Virginia Code § 11-8-5, which among other things provides that for real property to be considered Class II, it must be used exclusively by the owner for residential purposes. The Legislature also enacted general laws to enable a single parcel of real property to be divided solely for tax purposes based on different uses of a portion of the property to properly reflect the Constitution's classification system. *See* W. Va. Code §§ 11-4-2(1) and 11-4-18. West Virginia Code § 11-4-2(1) requires assessors to determine, in square feet, the area of a parcel used for residential purposes. West Virginia Code § 11-4-2(1) states that:

> The Tax Commissioner shall prescribe a form of landbook and the information and itemization to be entered therein, which shall include separate entries of: (1) All real property or *whatever portion thereof in square feet that is owned, used, and occupied by the owner exclusively for residential purposes*, including mobile homes, permanently affixed to the land and owned by the owner of the land….

8

(emphasis added). Additionally, West Virginia Code § 11-4-18 provides authority for a parcel to be divided based on use for purposes of entry upon county land books to reflect the proper classification of the parcel:

> [T]he county court may, upon the application of the owner, *divide*, consolidate, or both, as the case may be, *any tracts or lots for the purpose of entry upon the land books of the county*. This shall apply solely to the segregation of real property according to the classification contemplated by the "Tax Limitation Amendment." No such division shall be made unless there is in actual fact a distinction in use, and unless the division requested is one which the owner would make for the separate conveyance of portions of the tract or lot, but in no case shall any single structure be divided and only contiguous tracts or lots shall be consolidated.

(emphasis added).

The circuit court properly recognized that different uses of a single parcel of real property may result in that parcel being "split" for ad valorem tax classification purposes based upon these statutes. However, the circuit court determined that West Virginia Code § 36B-1-105(b), a part of the Uniform Act, operates to prohibit the operation of West Virginia Code §§ 11-4-2(1) and 11-4-18 for property held in common interest communities like the Lodge.

West Virginia Code § 36B-1-105(b)(1) and (2) provide how common elements in common interest communities are treated and taxed:

> (b) In a condominium or planned community:

9

(1) If there is any unit owner other than a declarant, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate.

(2) If there is any unit owner other than a declarant, each unit must be separately taxed and assessed, *and no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights*.

(emphasis added). Accordingly, pursuant to subsection (b)(1), a unit owner's interest in a condominium unit and the owner's fractional interest in common elements are to be treated as a separate parcel of real estate. The issue in this case concerns the effect of West Virginia Code § 36B-1-105(b)(2). According to the circuit court, West Virginia Code § 36B-1-105(b) is plain and unambiguous, and subsection (b)(2) overrides the general provisions in West Virginia Code §§ 11-4-2(1) and 11-4-18, providing that each parcel be afforded a split ticket to reflect multiple uses when the parcel is within a common interest community. Petitioner Owners argue that subsection (b)(2) does not reference tax *classification* at all and need not be read to override or nullify the statutes allowing for split tickets. We agree with Petitioner Owners and hold that West Virginia Code § 36B-1-105(b) does not operate to deprive Petitioner Owners of a right to seek differing classifications of their units and their fractional interest in common elements as generally provided in West Virginia Code §§ 11-4-2(1) and 11-4-18.

"The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 3, *In re I.S.A.*, 244 W. Va. 162, 852 S.E.2d 229 (2020) (quoting Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)).

We agree with the circuit court that West Virginia Code § 36B-1-105(b) is unambiguous but disagree about its application. The plain language of West Virginia Code § 36B-1-105(b)(2) does not prohibit—or even address—split ticket classification. Rather, subsection (b)(2)'s language "no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights" simply prohibits common elements from being taxed as a separate parcel. Under the split ticket classification Petitioners seek, the Commercial Space would not be taxed or assessed as a separate parcel, because each Petitioner Owner would be taxed for his or her fractional interest in the Commercial Space as part of the tax assessment on his or her unit. Each Petitioner Owner would simply receive the benefit of split ticket classification, under which the owner's residential unit would be classified as Class II property, and his or her fractional interest in the Commercial Space would be classified as Class III property. We

11

find that such split ticket classification is fully consistent with the plain language of West Virginia Code § 36B-1-105(b).

Moreover, even if we found that West Virginia Code § 36B-1-105(b) is also susceptible of a construction prohibiting split ticket classifications, and, therefore, is ambiguous, we would resort to the rules of statutory construction. *See Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (quoting *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949)) ("A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning."). "A statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). The rules of statutory construction would compel the Court to adopt the construction of West Virginia Code § 36B-1-105(b) that does not prohibit split ticket classifications.

Under the rule of *in pari materia*, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Similarly, "[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws,

12

and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions." *Charleston Gazette v. Smithers*, 232 W. Va. 449, 468, 752 S.E.2d 603, 622 (2013) (quoting *State v. Williams*, 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996)).

Accordingly, even if West Virginia Code § 36B-1-105(b) were susceptible of both the interpretation adopted by the circuit court that bars split ticket classification and the reading set forth above that does not address or prohibit split ticket classification, we would adopt the latter construction as the one that harmonizes—rather than conflicts—with West Virginia Code §§ 11-4-2(1) and 11-4-18. This interpretation of West Virginia Code § 36B-1-105(b) permitting split ticket classification is also supported by various persuasive authorities, including a comment from the drafters of the Uniform Act, caselaw from another jurisdiction, and another provision of the Uniform Act.

First, we find comments by the drafters of the Uniform Act helpful in our review.[6] The Uniform Law Commission adopted comment five to Section 1-105(b) of the Uniform Act as follows:[7]

> When separate tax assessments become mandatory under this section, the assessment for each unit must be based on the value of that individual unit, under whatever uniform assessment mechanism prevails in the State or locality. *Importantly, no separate tax bill on the common elements is to be rendered to the association or the unit owners collectively*, even though, in the context of planned communities, the common elements owned by the association might be subject to taxation as a separately owned parcel of real estate, in the absence of this provision.

---

[6] *See Quicken Loans, Inc v. Brown*, 230 W. Va. 306, 322-323, 737 S.E.2d 640, 656-657 (2012) (noting "the drafters' comments to the Consumer Credit Code to be highly instructive" in interpreting the West Virginia Consumer Credit and Protection Act); *Northeast Natural Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 367, 844 S.E.2d 133, 138 (2020) (relying on drafter comments to the Uniform Partnership Act); *Orlando v. Finance One of West Virginia, Inc.*, 179 W. Va. 447, 451 n.6, 369 S.E.2d 882, 886 n.6 (1988) (relying on drafter comments to the Uniform Consumer Credit Code); *see also Yacht Club II Homeowners Association, Inc. v. A.C. Excavating*, 94 P.3d 1177, 1179-1180 (Colo. App. 2003) ("We presume that, enacting a statute, the legislature was aware of decisional law…and we accept the intent of the drafters of a uniform act as the General Assembly's intent when it adopts a uniform act." (citations omitted)); *Hunt Club Condominiums, Inc. v. Mac-Gray Services Inc.*, 721 N.W. 2d 117, 123 (Wis. Ct. App. 2006). ("When a…statute has a counterpart among the uniform acts promulgated under the auspices of the National Conference of Commissioners on Uniform State Laws, we may consider the official and published comments of the drafters of the uniform law." (citation omitted)).

[7] Section 105(b) of the Uniform Act discussed in the drafters' comments is identical to West Virginia Code § 36B-1-105(b).

14

(emphasis added). Uniform Law Commission's Common Interest Ownership Act § 105(b) cmt. 5 ("Comment 5"). This comment clarifies that § 105(b) is intended to prohibit separate tax assessments on common elements for unit owners collectively or the unit owners' association. There is no indication in drafters' comments evincing an intent that § 105(b) prohibit separate *classifications* of an undivided interest in common elements based on the use of the common elements.

Second, a Colorado case provides guidance on the property tax classification of residential condominium units where part of the common elements is used for commercial purposes. *See Manor Vail Condominium Ass'n v. Board of Equalization of County of Eagle*, 956 P.2d 654 (Colo. App. 1998). Colorado imposes a higher tax rate on commercial property than residential property. *Manor*, 956 P.2d at 656. Colorado's version of the Uniform Act[8] contains similar provisions to West Virginia Code § 36B-1-105(b) (unit and common element ownership interests are treated as one parcel and common elements shall *not* be separately taxed or assessed). The Colorado law requires

---

[8] The statute at issue in *Manor* states that:

In a condominium or planned community with common elements, *each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate and must be separately assessed and taxed.* The valuation of the common elements shall be assessed proportionately to each unit, in the case of a condominium in accordance with such unit's allocated interests in the common elements…, *and the common elements shall not be separately taxed or assessed*….

Colo. Rev. Stat. Ann. § 38-33.3-105(2) (1993) (emphasis added).

15

county assessors to allocate the proportion of uses on a parcel (commercial versus residential), a process that is generally required for all parcels by West Virginia Code § 11-4-2(1).

In *Manor*, the assessor determined the proportion of value of the residential unit and commercial ownership interests and, despite the language in Colorado's version of § 105(b) (requiring that common elements not be separately taxed or assessed), the assessor calculated tax on each unit owner proportionately at a commercial rate for the common elements and at a residential rate for the residential units. The unit owners in *Manor* objected, arguing that the § 105(b) language prohibiting separate assessments for common elements required the assessor to classify their entire condominium ownership interests (including their proportional interest in commercial common elements) as residential. The Colorado Court of Appeals, relying on Comment 5, disagreed and stated that:

> Taxpayer's assertion that the Administrator's procedures set forth . . . violate § 38-33.3-105(2) is premised on the phrase in that statute stating that 'common elements shall not be separately taxed or assessed.' But, viewed in context, that phrase is merely a recognition that the value of common elements is inherently included as a component of each individual unit's total actual value and will be assessed and taxed as part of an individual unit's overall assessment and taxation, rather than separately taxed or assessed to the association as was previously done here…The practical effect of this aspect of the statute is that county assessors are not to schedule common element properties separately in their

16

> records nor issue separate notices of valuation or tax bills for
> them.

*Manor*, 956 P.2d at 660. *Manor's* interpretation of § 105(b) is reasonable, and it is consistent with Comment 5.

Third, the Uniform Act generally requires that common interest communities are to be treated similarly to other forms of real property ownership. For instance, West Virginia Code § 36B-1-106 provides that:

> (a) A building code may not impose any requirement upon any structure in a common interest community which it would not impose upon a physically identical development under a different form of ownership.
>
> (b) In condominiums and cooperatives, no zoning, subdivision, or other real estate use law, ordinance, or regulation may prohibit the condominium or cooperative form of ownership or impose any requirement upon a condominium or cooperative which it would not impose upon a physically identical development under a different form of ownership.

While West Virginia Code § 36B-1-106 does not directly relate to property tax on common interest community property, the statute illustrates the Uniform Act's general intent that state and local governments are to endeavor to treat common interest community property similarly to other forms of real property ownership.

17

Finally, the circuit court determined that the split ticket authority provided in West Virginia Code § 11-4-18 is unavailable to Petitioner Owners because the ownership interest must be "one which the owner would make for the separate conveyance." According to the circuit court, the Petitioner Owners are unable to convey their ownership interests in the Commercial Space because doing so would be like selling walls or wiring. However, Petitioner Owners assert, and the Tax Commissioner does not deny, that the declaration governing the Lodge allows for the conveyance of common elements in certain circumstances. Additionally, Petitioner Owners note that West Virginia Code § 11-4-18 does not specify that an ownership interest be immediately capable of transfer, only that an owner *could* make a separate conveyance. Indeed, background of this case demonstrates that the Commercial Space was in fact conveyed separately from the condominium units in the recent past. We find no reason why that same property could not be conveyed in the future if the requisite conditions in the declaration are satisfied.

## IV.    CONCLUSION

In summary, West Virginia Code § 36B-1-105(b) is unambiguous and does not prohibit split ticket classifications. Moreover, even if we found West Virginia Code § 36B-1-105(b) to be ambiguous, it may be read in harmony with the classification provisions of the property tax law (including West Virginia Code §§ 11-4-2 and 11-4-18) considering the purpose of the Uniform Act. Under the rules of statutory construction, that is the construction we would adopt. Therefore, as urged by Petitioner Owners, we find that

18

West Virginia Code § 36B-1-105(b)(2) does not prohibit the Tax Commissioner from creating split ticket classifications.

We conclude that the circuit court committed error of law when it affirmed the Property Tax Ruling 21-16 that West Virginia Code § 36B-1-105(b) prohibits owners of common interest community units from availing themselves of the property tax classification provisions of West Virginia Code § 11-4-2 and West Virginia Code § 11-4-18. The circuit court's order dated July 24, 2023, is therefore reversed.

Reversed.

19